In re the MARRIAGE OF Louise A. YATES, Appellee,

and

Dan A. Yates, Appellant.

No. 04CA1310.

Colorado Court of Appeals, Div. III.

June 29, 2006.

Certiorari Denied Nov. 13, 2006.

Canges, Iwashko, Bethke & Bailey, P.C., Erich L. Bethke, James S. Bailey, Denver, Colorado, for Appellee.

Dan A. Yates, Pro Se.

ROY, J.

In this dissolution of marriage proceeding, Dan A. Yates (husband) appeals from the trial court's permanent orders relating to the allocation of parental responsibilities, child support, maintenance, the division of marital property, and the issuance of a permanent injunction. We affirm in part, reverse in part, and remand for further proceedings.

Husband and Louise A. Yates (wife) are the parents of one child. During a confrontation which occurred in the presence of the child, wife apparently threatened husband with a knife. As a result of this confrontation, an emergency protection order was entered awarding temporary care and control of the child to husband and ordering wife to have no contact with husband. The next day, a mandatory restraining order to the same effect was entered against wife. Further, as a result of this confrontation, wife was charged and convicted of felony menacing as to husband and misdemeanor child abuse as to the child.

Shortly thereafter, wife filed a petition for dissolution of marriage and requested the entry of temporary orders granting her parental responsibilities for the child, child support, maintenance, and use of the marital home. After a hearing, the trial court appointed a special advocate, ordered both parties to obtain psychological evaluations, and, pending a report by the special advocate, awarded parental responsibilities to husband and granted wife supervised parenting time. Shortly thereafter, the special advocate advised the court that wife did not pose a danger to the child, and wife was granted unsupervised parenting time.

After several subsequent hearings, additional reports by the special advocate, and psychological evaluations of both parties, the court entered temporary orders. The court found that wife did not pose a threat to the physical or emotional welfare of the child, that she had historically been the child's primary caregiver, and that she had provided a beneficial and nurturing environment for him. Based upon these findings and the recommendations of the special advocate, the court ordered that the child should live primarily with wife, and that husband should have a weekly dinner visit with the child as well as visitation every other weekend. In accordance with the parties' agreement, a parental responsibilities evaluation was ordered.

The court received the recommendations of the special advocate and the parental responsibilities evaluator. Both recommended that the child should reside primarily with wife, and that wife should make all major decisions regarding the child. After reviewing the reports of the special advocate and the parental responsibilities evaluator and hearing their testimony as well as that of the parties and other witnesses, and after considering the wishes of the parents, the wishes of the child, and other relevant factors as set forth in § 14–10–124, C.R.S.2005, the trial court determined that it was in the child's best interests to continue the existing parenting time schedule, modified to add additional parenting time for husband. Decision-making responsibility regarding the child's extracurricular activities was allocated to husband, and decision-making responsibility regarding all other issues was allocated to wife. The court also extended the existing mutual restraining order until the child reached the age of nineteen.

The court then imputed to husband a monthly income of $12,845, based upon his earnings in his most recent employment, and ordered him to pay child support in an amount reflecting such earnings. Husband was ordered to continue to pay the mortgage on the marital home until its sale, and thereafter to pay wife $500 per month in maintenance. The court ordered that the marital property should be divided equally, and that each party should be responsible for his or her own debts. Finally, the court ordered that seventy percent of the parties' combined legal fees should be paid by husband, and thirty percent by wife, in proportion to each party's share of the total amount of income earned by them.

Husband now appeals the permanent orders relating to the allocation of parental responsibilities, child support, maintenance,

the division of marital property, and payment of attorney fees. He also appeals the entry of the mutual restraining order.

## I. Parenting Time and Decision–Making

■ Husband first contends that the trial court erred in awarding primary parenting time to wife, with a subsequent transition to equal parenting time, and in awarding sole decision-making to her, in view of her conviction on charges of domestic violence and misdemeanor child abuse. Husband argues that such an award exposes the child to abuse and contravenes § 14–10–124(1.5), C.R.S.2005. We perceive no error here.

Pursuant to § 14–10–124(1.5)(a)(IX) and (X), C.R.S.2005, in determining the allocation of parenting time, the court must consider whether one of the parties has been a perpetrator of child abuse or spousal abuse. The court must also consider such factors in allocating decision-making responsibilities pursuant to § 14–10–124(1.5)(b)(IV) and (V), C.R.S.2005.

A finding that a parent has been a perpetrator of child abuse or spousal abuse does not bar an award of parenting time or decision-making responsibility to that parent. Such factors are but two, albeit important, factors in assessing the best interests of the child. *See In re Marriage of Bertsch*, 97 P.3d 219 (Colo.App.2004)(trial court did not abuse its discretion in allocating primary parental responsibility and all decision-making responsibility to husband who had been charged with child abuse after striking eight-year-old son in the face; husband had worked on pertinent issues with a parenting coordinator and his own therapist, and two parenting time evaluators, the guardian ad litem, and the children's therapist all recommended that husband should be the primary residential parent and that he should have all decision-making authority).

The determination of the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the trial court. *In re Marriage of Lewis*, 66 P.3d 204 (Colo.App.2003).

Here, it was not disputed that wife had been convicted of menacing husband with a knife, and that because this occurred in the child's presence, she had also been convicted of misdemeanor child abuse. However, both the special advocate and the parental responsibilities evaluator recommended that the child should reside with wife and that she should be the primary decision-maker. In support of this recommendation, the special advocate advised the court that wife had received counseling and was continuing to receive counseling; that she appeared to be benefiting from the therapy; and that there had been no further incidents in the two years since the incident that had led to wife's arrest. The special advocate also stated that in her opinion the child's primary attachment was to wife, the attachment was healthy, and wife was the parent who was more able to put the child's needs first.

At the hearing on permanent orders, wife testified that she had been the victim of verbal abuse escalating to physical abuse by husband. Both the special advocate and the parental responsibilities evaluator expressed the opinion that husband likely had been a perpetrator of spousal abuse during the marriage.

In addition, the special advocate reported that husband was very angry toward wife and that it appeared that husband's anger had increased rather than diminished over time. She noted that husband's anger frightened the child. The parental responsibilities evaluator agreed that husband's anger disturbed the child, and found that because of his anger toward wife, husband would not be able to encourage the sharing of love, affection, and contact between wife and the child. The evaluator found that wife was less angry and would be able to encourage the sharing of love, affection, and contact between husband and the child.

The trial court reviewed and made findings regarding the factors set forth in § 14–10–124. The court found that both parties had engaged in spousal abuse and that such abuse had occurred in front of the child and thus constituted abuse of him as well. However, the court also found that wife had been present for the child "most of the time," and

that the relationship between wife and the child was "very positive." Husband's continuing anger and contempt toward wife were noted, as well as the concerns of the special advocate and the evaluator that husband had limited ability to encourage the sharing of love, affection, and contact between wife and the child.

The court ultimately concluded, based primarily on the "historical parenting relationship" between the parties and the child, that the existing parenting time schedule should be continued until the end of the school year, and that thereafter the child should spend one week with one parent and the next week with the other. Because there was no credible evidence that the parties could make decisions jointly, the court declined to order shared decision-making, and ordered instead that husband should make decisions regarding the child's extracurricular activities, and wife should have responsibility for all other decisions.

■ We begin our analysis by rejecting husband's contention that the trial court erred in relying on *In re Marriage of Bertsch, supra*, and in concluding that § 14–10–124 does not prohibit an allocation of primary residential placement and decision-making responsibility to a parent convicted of child abuse. In *Bertsch*, a division of this court held that although a parent's perpetration of child abuse or spouse abuse is an important factor in assessing the best interests of the child, it is not dispositive as to whether a parent may be designated the primary residential parent or granted decision-making responsibilities.

We, too, are persuaded that a parent who has abused a child or a spouse may become a fit parent, and may indeed be more fit than the alternative parent. Here, the court found, with record support, that both husband and wife had abused the child by engaging in abusive behavior toward each other in his presence.

However, evidence presented at the permanent orders hearing showed that wife was receiving counseling and benefiting from it, and there was no suggestion that she would abuse the child in the future. Both the special advocate and the parental responsibil-ities evaluator expressed greater concern about husband's parenting skills, and in particular, his ability to encourage the sharing of love, affection, and contact between wife and the child. Under the circumstances, we are persuaded that the court could reasonably conclude that wife was the more fit parent.

We conclude that the court correctly applied § 14–10–124, and that its findings are supported by the record. Accordingly, we perceive neither error nor an abuse of the court's discretion here.

## II. Due Process

■ Husband contends that the trial court erred, and denied his right to due process, by refusing to allow him to "fully and meaningfully present and conclude his case," and, in particular, by denying him the right to present evidence regarding the issue of property division. We disagree.

The opportunity to be heard, an inherent element of due process, must be granted at a meaningful time and in a meaningful manner. Balanced against this obligation of the trial court to accord each party due process is its need to regulate its calendar and to manage efficiently the case before it. *In re Marriage of Goellner*, 770 P.2d 1387 (Colo.App.1989).

In *Goellner, supra*, on the day of the permanent orders hearing, the parties' counsel could not agree on how long the trial would take, one indicating one day and the other two days. Following a discussion, the trial court imposed, without the consent of the parties, a time limit of six hours per side including cross-examination and adamantly enforced the limits despite the fact that the respondent used five and one-half hours in cross-examination during the petitioner's presentation. A division of this court reversed, stating:

> It is evident from the record that the trial court was adamant in allowing only six hours to each side to present that party's case. That may well have been adequate for purposes of presenting the party's own evidence; however, the six hours was also to include the time spent in cross-examining the opposing party's witnesses. The court allowed no flexibility in the time

period allocated. This constitutes prejudicial error in that the mother was not given the opportunity to testify or present witnesses regarding issues of custody and the valuation of the marital estate.

. . . .

Accordingly, we conclude, regardless of counsel's miscalculation of time, that under the facts and circumstances presented here, the mother was denied a full and fair hearing, and the refusal of the court to allow the mother to present testimony was an abuse of discretion.

*In re Marriage of Goellner, supra,* 770 P.2d at 1389.

Here, in contrast to *Goellner,* counsel for both parties agreed at the pretrial conference that each would have seven hours to present his or her client's case, including cross-examination. Husband's attorney did not suggest that more time would be needed. The parties were reminded of the time limits and the time already used throughout the hearing.

At the conclusion of the first day of the hearing, the court expressed its concern that it might be impossible to reach all the issues during the three days allotted for the hearing. The court stated that if necessary, the matter would be bifurcated, because the court did not want either party to feel that he or she had not been able to put his or her case before the court. After some discussion, the court determined that both parties wanted to complete the hearing in the remaining two days.

On the second day of the permanent orders hearing, husband's attorney spent a substantial amount of time cross-examining wife. On the third day of the hearing, a review of the time used by each attorney showed that husband's attorney had exceeded her allotted time. She then asked that the court restore to her the eighty-two minutes that she had used for wife's cross-examination, on the ground that she had obtained only "four or five answers" from wife during that time. The court declined to restore the time, noting that the attorney had used her time as she deemed appropriate. However, the court agreed to allocate to husband the remaining time that the court had set aside

for itself, which was approximately forty minutes.

Even with the additional time allocated to husband, his counsel was unable to complete her direct examination of him. Immediately before closing arguments were to begin, husband's counsel entered an objection, arguing that husband had been deprived of the opportunity to present his case because of a time limit that the parties had been unable to meet. She requested an additional thirty minutes. The court refused the request, noting that she had already had extra time and that she had been responsible for deciding how to use it. However, the court agreed to accept husband's Exhibit V as his proposal regarding the division of marital property.

We reject husband's suggestion that his attorney's conduct constituted "gross negligence" which should not be imputed to him. Generally speaking, an attorney of record has implied authority to enter into stipulations and agreements in all matters of procedure during the progress of a trial, and his client is bound by his actions with respect to matters of procedure. *Schleiger v. Schleiger,* 137 Colo. 279, 324 P.2d 370 (1958). Thus, husband's attorney had authority to enter into an agreement regarding the amount of time to be allowed to each party for the presentation of his or her case, and she had the authority to manage the use of that time. Husband is bound by his counsel's decisions in this matter.

We are not persuaded that husband lacked sufficient time to make an orderly presentation of his case. We conclude that his attorney's inability to complete the presentation of husband's case was attributable to the attorney's choices regarding the use of the time available, and not to any unwillingness on the part of the court to allow each party adequate time to present his or her case. We are also cognizant that the extended cross-examination of wife may have been insisted upon by husband. Accordingly, we conclude that the court did not deny husband due process when it denied him additional time to complete his case.

### III. Imputed Income

Husband contends that the trial court abused its discretion in imputing income to him for the purpose of determining child support absent findings regarding his involuntary job loss, his ability to pay, and the needs of the child. We do not agree.

In a proceeding for dissolution of marriage, the court may order either or both parents to pay an amount determined to be reasonable or necessary for their child's support after considering all relevant factors, including the financial resources of the child and the custodial parent, the standard of living the child would have enjoyed had the marriage not been dissolved, the physical and emotional condition of the child and his or her educational needs, and the financial resources and needs of the noncustodial parent. Section 14–10–115(1), C.R.S.2005.

For the purpose of determining child support, income is defined as "actual gross income of a parent, if employed to full capacity, or potential income, if unemployed or underemployed." Section 14–10–115(7)(a), C.R.S. 2005. With certain exceptions not applicable here, child support is to be calculated based on a determination of potential income if a parent is voluntarily unemployed or underemployed. Section 14–10–115(7)(b)(I), C.R.S. 2005.

Whether potential income should be imputed to a parent is typically a question of fact, and the trial court's findings regarding potential income are entitled to deference on review if supported by the record. *People v. Martinez*, 70 P.3d 474 (Colo.2003). A trial court may consider evidence of a party's historical income in determining the amount of income that may be imputed to him or her. *In re Marriage of Bregar*, 952 P.2d 783 (Colo.App.1997).

Here, the court found that husband's disclosures of financial information were "atrocious." The only documentation of husband's 2003 income submitted to the court was a document obtained by wife from husband's former employer. The court imputed income to husband based on the information found in that document.

We perceive no abuse of discretion in the court's decision to impute income to husband based on the only information available regarding husband's 2003 income. We are not persuaded that the court was required to impute income to husband in a different amount because husband's job loss was involuntary, or because his employment prospects may have been limited by his desire to obtain a position that did not require extensive travel.

Husband himself testified that he believed he could obtain new employment at a "comfortable" salary. He also testified that he had turned down, or not pursued, positions that would have required travel, and that he was considering, but had not done, consulting work.

Thus, the court could reasonably conclude that husband had voluntarily chosen not to pursue or accept certain types of employment, and that, despite the self-imposed limitations on his job search, he was capable of earning a "comfortable" income. We are not persuaded that it was unreasonable for the court to use husband's earnings in the last year of his employment as an estimate of the "comfortable" income that husband could earn in a new position. In addition, the trial court retains jurisdiction of the issue, and in the event husband accepts employment at a lower income, the matter may be reconsidered as provided by § 14–10–121, C.R.S.2005. We also conclude that the court properly did not consider the child's needs before imputing income to husband. Although the child's needs may be considered in determining the amount of child support that must be paid at a given level of income, nothing in § 14–10–115(7), C.R.S.2005, suggests that the child's needs are relevant to the determination of a parent's income.

### IV. Child Support Judgment

Husband also contends that an order granting wife's post-decree motion for entry of judgment for unpaid child support in the amount of $10,534.36 "was effected in contravention of the law, and is void." Because this contention relates to an order entered after husband gave notice of his intent to appeal the permanent orders, and the notice

of appeal was never amended to give notice of husband's intent to appeal this order, we conclude that this contention is not properly before this court for review.

## V. Special Advocate

■ Husband contends that the special advocate acted improperly when she filed pleadings and participated as an attorney in the dissolution proceedings, and that the court erred in awarding her fees in excess of $43,000. We disagree.

The former version of § 14–10–116(1) was in effect at the time of these proceedings. It provided that the court could appoint either or both of the following: (a) an individual to serve as a legal representative of the child, or (b) an individual to serve as a special advocate. The child's legal representative was authorized to "actively participate in all aspects of the case involving the child, within the bounds of the law," while a special advocate was to "make independent and informed recommendations to the court." Colo. Sess. Laws 1997, ch. 14, § 14–10–116(2) at 32–33.

Here, the special advocate submitted her reports and recommendations to the court as required by former § 14–10–116(2)(b), and testified regarding her recommendations at the permanent orders hearing. She also requested that the court issue orders as needed to resolve child-related issues, responded to husband's efforts to have her removed, and sought payment of her fees. At the pretrial conference, she requested that time be allocated to her for cross-examination of the witnesses called by the parties at the permanent orders hearing. The trial court advised the attorneys for both parties that it was the court's usual practice to allow special advocates to ask questions "whether they are lawyers or not," and asked the attorneys what they would prefer. Both attorneys agreed that the special advocate should be allowed to ask questions.

At the conclusion of the permanent orders hearing, the court noted that the special advocate had submitted an affidavit for fees estimated to be $43,905 at the end of trial. The court ordered that any amount not paid by either party be deducted from his or her share of the proceeds from the sale of the marital home.

We are not persuaded that the special advocate's activities were improper. Husband has cited no authority for the proposition that a special advocate may not respond to a party's efforts to remove her, or that she may not request the court's assistance in resolving child-related issues and in securing payment of her fees, and we are aware of no such authority. As for the special advocate's cross-examination of witnesses at the permanent orders hearing, we note that the special advocate was an attorney, and husband's attorney agreed to this procedure when it was proposed. Thus, husband may not object now.

We also are not persuaded that the court erred in ordering that each party should pay his or her share of the special advocate's fees. Husband's objection to the payment of these fees appears to be based on his perception that the special advocate's recommendations furthered wife's interests rather than his. However, the special advocate's duty was to provide assistance to the court, not to be an advocate for husband. Husband's dissatisfaction with the special advocate's recommendations does not justify a reduction in, or reallocation of, her fees.

## VI. Maintenance

■ Husband contends that the court erred by denying him maintenance, and by awarding wife permanent maintenance in the absence of the findings required by § 14–10–114, C.R.S.2005, and in light of an award of over $500,000 in property to wife. We do not agree.

Before awarding maintenance, the court must determine that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs, and is unable to support himself or herself through appropriate employment. Section 14–10–114(3), C.R.S.2005. After making the required threshold findings, the court may order that maintenance be paid in such amounts and for such periods as the court deems just after considering all relevant factors, including the financial resources

of the party seeking maintenance, that party's future earning capacity, the standard of living established during the marriage, the duration of the marriage, the age and physical and emotional condition of the spouse seeking maintenance, and the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance. Section 14–10–114(4), C.R.S.2005.

■ A maintenance award is not limited to satisfying a spouse's basic or survival needs. *In re Marriage of Nordahl*, 834 P.2d 838 (Colo.App.1992). The phrase "reasonable needs" has been liberally construed, and determination of a spouse's reasonable needs is dependent on the particular facts and circumstances of the marriage. *See In re Marriage of Page*, 70 P.3d 579 (Colo.App. 2003)(where evidence showed that wife's psychological problems restricted her ability to practice effectively as a psychologist and that in any case her earnings would have been insufficient to provide a standard of living remotely approximating the marital lifestyle, evidence was sufficient to establish her eligibility for maintenance); *In re Marriage of Bartolo*, 971 P.2d 699 (Colo.App.1998)(court did not err in finding that former schoolteacher met the threshold need for maintenance based on her age, the relinquishment of her teaching career at husband's request, her diminished pension benefits, and the expectation of the parties that she would devote herself to being a full-time homemaker and wife).

■ An award of maintenance is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *In re Marriage of Bartolo, supra.* The court need not make explicit findings regarding the criteria for eligibility for maintenance. *In re Marriage of Lee*, 781 P.2d 102 (Colo.App.1989).

Here, both parties requested spousal support. Wife alleged that she was entitled to support because the disparity between her income and husband's had significantly reduced her standard of living. She requested maintenance in the amount of $1,300 per month. Husband argued that he should receive support because he was unemployed.

The trial court found that wife's income was $4,750 per month, and that husband's earning ability, based on his 2003 income, was $12,845 per month.

The trial court noted that the parties had been married for almost twenty years, and that wife's contribution to husband's career was significant. It found that an award of permanent maintenance to wife in the amount of $500 per month was "appropriate" based on wife's "current financial success" and that any amount above that would not be appropriate based on the parties' current circumstances.

The trial court denied husband's request for maintenance, citing his "significant earning history" and his "excellent ability to be employed" as shown in both his own deposition testimony and his testimony at trial. It recognized that husband's employment opportunities might be somewhat curtailed by his desire to obtain employment that did not require significant amounts of travel, but concluded that husband had the demonstrated ability to earn at least $100,000 per year "under an[y] set of circumstances."

■ We conclude that the trial court's findings support both its award of permanent maintenance to wife and its denial of maintenance to husband. We reject husband's suggestion that wife should not have been awarded maintenance because she received a substantial amount of property. A spouse is not required to deplete his or her share of the marital estate in order to qualify for maintenance. *In re Marriage of Bartolo, supra.*

### VII. Standing to Challenge Property Division After Bankruptcy

Husband contends that the trial court abused its discretion in awarding wife a significantly greater portion of the marital property. Wife suggests that because husband filed for bankruptcy he may not have standing to pursue this contention. We conclude he lacks the requisite standing.

### A. Attachments to Brief

■ We first address husband's motion to strike the attachments to wife's supple-

mental brief on the effect of the bankruptcy on this appeal. The attachments include a copy of the bankruptcy petition filed by husband on May 31, 2005, a copy of husband's statement of financial affairs, a copy of the schedules filed with the petition, and a copy of the docket report for petition no. 05–23295–SSB. Husband contends that this material is "outside the scope of the record" and that consideration of this material constitutes reversible error. We disagree.

When this court learned that a bankruptcy petition had been filed, both parties were invited to submit supplemental briefs addressing the effect of the bankruptcy on this appeal. In addition, husband was ordered to provide this court with written notice of the bankruptcy proceeding. Husband did not do so; instead, he requested clarification of the order. Wife, however, provided copies of the petition and related materials as described above. Because these materials provide this court with written notice of the bankruptcy and because we have no reason to believe that they are unreliable, we conclude that no useful purpose would be served by striking them and then ordering husband to supply the same documents. Accordingly, we will consider them for the limited purpose of determining whether husband has standing to assert claims in this appeal.

## B. Standing on Appeal

■ We next address husband's contention that he has standing to pursue this appeal because no bankruptcy proceeding is currently pending. To the extent that husband contends that he has standing to pursue claims relating to the division of marital property, we disagree.

■ The commencement of a bankruptcy case creates an estate comprising all legal and equitable interests of the debtor in property, including causes of action belonging to the debtor. Thereafter, only the trustee has standing to assert those causes of action. *Black v. First Fed. Sav. & Loan Ass'n*, 830 P.2d 1103 (Colo.App.1992), *aff'd sub nom. La Plata Med. Ctr. Assocs., Ltd. v. United Bank*, 857 P.2d 410 (Colo.1993).

In *Miller v. Accelerated Bureau of Collections, Inc.*, 932 P.2d 824 (Colo.App.1996), the debtors brought an action under the Colorado Fair Debt Collection Protection Act, § 12–14–101, et seq., C.R.S.2005, after filing for bankruptcy protection. In the bankruptcy proceedings, the debtors did not list any claims against the collection agency as an asset. A division of this court held that the claim became an asset of the bankruptcy estate and the debtors lacked standing to pursue it.

■ A debtor may pursue a cause of action accruing before or during the bankruptcy proceeding only if it has been abandoned by the estate. Even the close of the bankruptcy case does not permit the debtor to assert a claim that has not been abandoned. *Tilley v. Anixter Inc.*, 332 B.R. 501 (D.Conn.2005).

A trustee may abandon property that has been scheduled under 11 U.S.C. § 521(a)(1) (2000) after notice and a hearing, as provided by 11 U.S.C. § 554(a)-(b) (2000), or by failing to administer the property before the close of the case, as provided by 11 U.S.C. § 554(c) (2000). Unscheduled property remains the property of the estate if not administered before the case is closed. *In re Medley*, 29 B.R. 84 (Bankr.M.D.Tenn.1983). The debtor bears the burden of proving that property has been abandoned. *Mele v. First Colony Life Ins. Co.*, 127 B.R. 82 (D.D.C.1991); *Bowie v. Rose Shanis Fin. Servs., LLC*, 160 Md.App. 227, 862 A.2d 1102 (2004).

Here, husband filed this appeal prior to his filing his bankruptcy petition. Thus, while husband had standing to litigate the division of marital property in the trial court, he lost standing to pursue the issue on appeal. Husband has not shown that such claims were scheduled as required by 11 U.S.C. § 521(a)(1), and has not shown that they were abandoned by the trustee. Accordingly, we conclude that husband lacks standing to pursue them. *See Robson v. Tex. E. Corp.*, 833 N.E.2d 461, 473 (Ind.Ct.App.2005)(unless a claim is scheduled by the debtor and abandoned by the bankruptcy trustee the claim may no longer be pursued by the debtor); *Leffler v. Leffler*, 602 N.W.2d 420 (Minn.Ct.App.1999)(former

315

husband did not have standing to appeal from order distributing marital property which was part of bankruptcy estate and had not been exempted or abandoned).

## VIII. Attorney Fees

Husband contends that the trial court abused its discretion in awarding wife attorney fees pursuant to § 14–10–119, C.R.S. 2005. We do not agree.

### A. Standing After Bankruptcy

We first address, and reject, wife's suggestion that husband lacks standing to pursue this contention.

■ A "domestic support obligation," as defined in 11 U.S.C. § 101(14A) (2000), includes debt that is in the nature of maintenance or support and is owed to a former spouse or child of the debtor under a separation agreement, divorce decree, property settlement agreement, or court order. A domestic support obligation is not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(5) (2000).

■ Bankruptcy courts and state courts have concurrent jurisdiction to determine whether a debt is in the nature of support or in the nature of property division. *In re Marriage of Wisdom*, 833 P.2d 884 (Colo. App.1992).

Where an award of attorney fees is intended to balance a disparity of income between parties to a dissolution proceeding, courts in other jurisdictions have concluded that the award is in the nature of support rather than in the nature of property division. *See, e.g., In re Beggs*, 314 B.R. 401 (Bankr.E.D.Ark. 2004); *In re Ackerman*, 247 B.R. 336 (Bankr. M.D.Fla.2000).

Here, the court found that husband earned seventy percent of the family income, and wife earned thirty percent. The court concluded that it was appropriate that husband should pay seventy percent of the attorney fees based on the standard set forth in § 14–10–119. We conclude that the award of attorney fees was in the nature of a support obligation. Because a support obligation is not dischargeable in bankruptcy, husband remains obligated to pay this award, and we conclude that he has standing to challenge it.

### B. Award to Wife

■ We also reject husband's contention that the court abused its discretion in awarding attorney fees to wife under § 14–10–119.

Under § 14–10–119, the court may apportion attorney fees and costs incurred in a dissolution proceeding based on the relative economic circumstances of the parties in order to equalize their status and to ensure that neither party suffers undue economic hardship as a result of the proceedings. In awarding fees and costs under § 14–10–119, the court must consider the relative financial status of each party by making findings concerning their relative incomes, assets, and liabilities. The court may then apportion fees and costs in light of the statute's equitable purpose, making findings that explain how and why it arrived at the specific amount of the award. *In re Marriage of Aldrich*, 945 P.2d 1370 (Colo.1997).

In awarding attorney fees, the court must consider both the reasonableness of the hourly rate and the necessity for incurring the hours billed. *In re Marriage of Rieger*, 827 P.2d 625 (Colo.App.1992). A party's behavior may be considered in awarding fees only to the extent that it might affect the reasonableness and necessity of those fees. *In re Marriage of Woolley*, 25 P.3d 1284 (Colo. App.2001).

■ The court has broad discretion in the award of attorney fees under § 14–10–119, and its ruling will not be disturbed absent an abuse of that discretion. *In re Marriage of McCord*, 910 P.2d 85 (Colo.App.1995).

Here, wife's attorney submitted an updated attorney fees affidavit to the court during the permanent orders hearing. Wife then testified as to the amount of fees she had incurred, the necessity for them, and her request that husband be ordered to pay a portion of them. The court advised both parties that they should address the issue of attorney fees during the permanent orders hearing, and that the court would allow fifteen days for written responses following the hearing.

At the conclusion of the permanent orders hearing, after dividing the marital property and determining the amounts of maintenance and child support to be paid, the court ordered that husband pay seventy percent of the total amount of attorney fees incurred by both parties in the course of the litigation. The court found that it was "appropriate" that each party should pay a share of the total attorney fees in proportion to his or her share of the family income, "based on the standard set forth in 14–10–119." The court also found that wife's felony conviction would not have been an adequate basis for changing the temporary orders regarding parental responsibilities, and that accordingly there was not a valid basis to allocate to wife the costs associated with the motions and hearings allegedly "necessitated by" her felony conviction.

Neither party filed a written response to the other's affidavit of attorney fees following the permanent orders hearing.

We conclude that the order requiring husband to pay a portion of the parties' attorney fees that reflects his share of the parties' combined income is reasonable in light of the equitable purpose of § 14–10–119 and that the order is not an abuse of the court's discretion. Because husband's objections to the adequacy of wife's attorney's affidavit were not presented to the trial court, we may not address those objections on appeal. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo.1992)(arguments not presented to, considered by, or ruled on by the trial court may not be raised for the first time on appeal).

### IX. Permanent Injunction

■ Husband contends that the trial court erred in issuing a permanent injunction enjoining the parties from being within ten yards of each other and requiring husband to cooperate with anger management therapy. More particularly, husband argues that the trial court lacked jurisdiction, lacked statutory authority, and failed to make the required findings. We conclude that a remand is necessary.

We recognize that husband stated as part of his contention on appeal that the orders violated his First and Second Amendment rights. However, aside from mentioning that the order violated his First Amendment rights in requiring him to undergo anger management therapy, he does not pursue either argument further and fails to cite any authority supporting it. Therefore, we will limit our analysis to the procedural arguments.

Further, at the outset and having reviewed the record, we note that there is ample evidence in the record to support both orders. The trial court adopted its bench ruling as the permanent injunction. In that ruling, the trial court found:

I find credible evidence in this case that both parties have perpetrated some kind of abuse of this child.

An[d] my finding with respect to Mom, clearly her conviction of misdemeanor child abuse for menacing Dad in the presence of [the child], is clear evidence that she . . . she has . . . abused the child.

The Court finds . . . that the abusive relationship between these parties is extremely problematic for [the child] and will require [the child] to be in therapy to address his father's anger towards his mother and his mother's criminal acts towards his father.

. . . .

Similarly . . . I find that both parties have. And, I find . . . that Dad was also a perpetrator of spouse abuse on Mom.

The trial court then gave detailed instructions on parenting time and, most particularly, ordered that the transfer of the child between the parties was to occur in a public place and that both parents and the child remain in therapy. The following exchange then occurred:

[WIFE'S COUNSEL]: All right. My next question is: We had made a request for mutual restraining orders. It is not to vilify anyone, but my concern is, Your Honor, it has been extremely volatile between the parties. And I think you heard persuasive testimony from [the special advocate] about anger and I am concerned, Your Honor. I do not want to be back in

Court on an emergency for either of these parties.

THE COURT: All right. I am happy to issue a mutual restraining order that neither parent may be within ten yards of the other parent. The contact will be limited as set forth by the Court and that the pickups and dropoffs will occur in a public place as previously outlined by the Court. The child will come—the parent will come with the child and then leave after he or she has seen the other parent present no less than ten yards from the place where the child will be. And we discussed it in terms of the fireplace at Park Meadows [location later changed].

Subsequently, husband's counsel questioned the restraining order.

### A. Mutual Restraining Order

Pursuant to § 13–14–102(3.3), C.R.S.2005, any district court, in an action commenced under the Uniform Dissolution of Marriage Act, shall have authority to issue temporary and permanent protection orders pursuant to § 13–14–102(1.5), C.R.S.2005. Subsection (1.5) in turn provides for the issuance of temporary or permanent civil protection orders for such purposes as the prevention of assaults and threatened bodily harm and the prevention of domestic abuse. A mutual protection order to prevent domestic abuse may be issued only if each party has met his or her burden of proof regarding the existence of an imminent danger to himself or herself, as required by § 13–14–102(4), C.R.S.2005, and the court has made sufficient findings of fact to support the issuance of the order. Section 13–14–102(18), C.R.S.2005. The order shall be issued using the standardized forms developed by the state court administrator. Section 13–14–102(2), C.R.S.2005.

Here, the trial court entered a mutual restraining order at the request of wife. The court determined that the restraining order should remain in effect until the child reaches the age of nineteen, and this provision was included in the permanent orders. The court based this decision on its determination that "it would not be healthy for [the parents] or for [the child] not to have a restraining order in place." The trial court specifically noted

that it had found "credible evidence of domestic violence." The trial court did not, however, conclude that the parties were an imminent threat to each other, nor did it enter the order on the forms developed and issued by the state court administrator as required by the statute.

Therefore, the matter must be remanded for further findings and, if appropriate, the issuance of a permanent restraining order in conformity with the procedural formalities required by the statute.

### B. Anger Management Counseling

■ Parents may be ordered to obtain counseling if such counseling is determined to be in the best interests of the child. *See In re Marriage of Finer*, 920 P.2d 325 (Colo.App.1996)(trial court did not abuse its discretion by ordering parties into counseling for parenting purposes; court had found that the counseling requirement was in the child's best interests, and the requirement was supported by the court's findings and the evidence).

■ Here, both the special advocate and the parental responsibilities evaluator expressed concern to the court that husband's anger toward wife was frightening and disturbing to the child, and the evaluator recommended that husband be required to begin psychotherapy with a therapist who could "help him understand his difficulties with experiencing and expressing anger." The court found that husband had not been able to recognize his anger toward wife, and that his continued anger toward wife could be harmful to the child. Accordingly, the court determined that the evaluator's recommendation regarding therapy should be incorporated into the court's order, and the court specifically ordered that husband should seek counseling from one of two providers named by the court.

Because there is ample support in the record for the court's finding that husband's anger toward wife was disturbing to the child and potentially harmful to him, we conclude that the court did not abuse its discretion in ordering that husband seek counseling to address his anger.

We reject husband's argument that the court's finding regarding his anger toward wife is "unsupportable" in view of the finding of a previous therapist that he did not need anger management treatment. The trial court's resolution of conflicting evidence is binding on review. *In re Marriage of Bowles*, 916 P.2d 615 (Colo.App.1995). Thus, to the extent that the previous therapist's views conflicted with those of the special advocate and the parental responsibilities evaluator, the trial court's resolution of the conflict is binding on this court.

### X. Appellate Attorney Fees

Wife requests an award of appellate attorney fees pursuant to §§ 13–17–102 and 14–10–119, C.R.S.2005. We conclude that wife is not entitled to an award of attorney fees pursuant to § 13–17–102, but her request for an award of fees pursuant to § 14–10–119 should be considered by the trial court on remand.

### A. Lack of Substantial Justification

Pursuant to § 13–17–102(4), C.R.S.2005, the court shall assess attorney fees if, upon motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification. However, pursuant to § 13–17–102(6), C.R.S.2005, a party who is appearing without an attorney and is not himself an attorney shall not be assessed attorney fees unless the court finds that the party clearly knew or reasonably should have known that his action or defense, or any part thereof, was substantially frivolous, substantially groundless, or substantially vexatious. Further, husband has succeeded with respect to the mutual restraining order issue, and so, while the issues raised are somewhat extended, he was not without success on appeal.

Accordingly, we deny wife's request for an award of attorney fees pursuant to § 13–17–102.

### B. Section 14–10–119

Under § 14–10–119, the trial court has broad discretion in awarding such fees, and absent an abuse of such discretion, the court's award will not be disturbed on appeal. *In re Marriage of Lishnevsky*, 981 P.2d 609 (Colo.App.1999).

Because the trial court is better equipped to determine questions of fact and to make a full and complete investigation and adjudication, wife's request for an award of appellate attorney fees should be presented to the trial court. *See Watson v. Watson*, 135 Colo. 296, 310 P.2d 554 (1957). Accordingly, the trial court is directed to hear wife's motion for attorney fees on proper application, and to make such order as the facts and circumstances may warrant.

The judgment is reversed as to the permanent mutual restraining order, and the case is remanded to the trial court for further proceedings on that order and for consideration of wife's request for an award of appellate attorney fees pursuant to § 14–10–119.

The judgment is affirmed in all other respects.

Judge TAUBMAN and Judge LOEB concur.