J-A25017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.K., | : | IN THE SUPERIOR COURT OF |
| Appellee | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| J.D. & O.C., | : | |
| Appellants | : | |
| | : | |
| | : | No. 3283 EDA 2017 |

Appeal from the Order September 11, 2017
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 15-80483,
15-80485

BEFORE: PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY PANELLA, J.: **FILED MAY 23, 2019**

Appellants, J.D. and O.C., the maternal grandparents ("Grandparents") of two minor grandchildren ("Children"), appeal from the order modifying the stipulation negotiated by counsel to resolve a Protection from Abuse petition ("PFA") filed by Appellee, T.K. ("Father"), on behalf of himself and the Children. Grandparents claim they were denied due process by the trial court's decision to modify the negotiated stipulation without an additional hearing. We affirm.

This is one of three inter-related companion appeals with a long, complex, contentious, and convoluted history.[1]  The parties, and the Children's mother ("Mother") have apparently been involved in some form of custody dispute since at least 2011.  We derive the facts and procedural history of this case from the trial court's opinion.[2]

Briefly summarized, Father is a citizen of the United States.  Mother is a native of Argentina.[3]  Grandparents are also from Argentina.  The marriage of Father and Mother resulted in two children, M.A.K. (born in 2009) ("Son") and T.M.K. (born in 2010) ("Daughter").  For a time, Grandparents lived with Father, Mother, and the Children.

Father has been granted primary physical custody of the Children. Pertinent to this appeal, Father filed for a Protection from Abuse order, alleging, *inter alia*, that Grandparents, as well as Mother, were violent toward the Children. Grandparents denied that they had ever abused the Children.

_____

[1] At 3321 EDA 2017, Mother appealed from her conviction for indirect criminal contempt for violating a PFA order after concluding her visit with the Children under an existing custody order. At 3499 EDA 2017, Father appealed from an order finding him in contempt of the custody order and directing him to pay $1,000 in counsel fees to Mother.

[2] Among numerous procedural lapses, counsel for Grandparents fails to include the trial court's opinion, or the Grandparents' statement of errors in their appellate brief.  **See** Pa.R.A.P. 2111.  The brief cites, but omits, Appendices A, B, C, and D.  **See** Grandparents' Brief, at 3.

[3] Mother claims, without dispute, that she now has dual citizenship (both Argentina and the United States).

Father testified that he confronted Mother about her violent behavior toward Daughter during a vacation trip to Colorado. Father alleged that in response, Mother claimed that corporal punishment was justified because the Children were not well-behaved.

She also attacked Father, banging his head against a wall, kicking him repeatedly in the testicles, biting his hand, trying to scratch his eyes, and choking him, in the presence of the Children. *See id.* at 3-4. Father called the police. Mother was arrested. Eventually, a Colorado jury convicted Mother of assault and harassment.

Notably, Mother was also charged with, but eventually acquitted of, child abuse. Under Colorado law, violence against a spouse in front of children constitutes child abuse. *See, e.g., In re Marriage of Yates*, 148 P.3d 304, 308 (Colo. App. 2006) (noting that mother's conviction for misdemeanor child abuse was based on menacing father with a knife in front of children). Therefore, while the child abuse charges were pending, Mother's access to her children was restricted by the Colorado court pending action by the court which had jurisdiction over custody, the Delaware County Court of Common Pleas. The Delaware County Court of Common Pleas granted restricted visitation rights to Mother in an attempt to maintain "partial physical custody" for Mother which would meet with the approval of the Colorado court.

Father also asserted in his petition that in 2011, maternal Grandfather intimidated, by brandishing a firearm, a custody supervisor, and absconded

with the Children from Buenos Aires to a more remote location in Argentina. *See* Petition For Relief Under Protection From Abuse Act, 4/14/15, at unnumbered page 3. Father has further accused Mother **and** Grandparents of plotting by various means, such as trying to obtain duplicate Argentinian passports for the Children, to remove the Children from the United States and return them to Argentina to live with Mother. *See id.*

At one point, Father's home in Pennsylvania was ransacked and the Children's passports were stolen. *See id.*, at unnumbered page 4. The passports were eventually returned to Father through Mother's counsel. Father also asserted Grandparents have exploited custody, visitation and related availability of the Children to extort money from him. *See id.*

Pertinent to the issues in this appeal, it is important to note that Mother's visitation with Children had been restricted to one hour, twice a week, held in a room of the Children's local church, in the presence of an armed security guard and a translator. *See* Emergency Custody Order, 4/24/15, at ¶ 4.[4]

Because the trial court wanted the partial physical custody to maintain a continuity of relationship between Mother and the Children, the court

---

[4] This custody order is incorporated into the stipulated PFA order by way of paragraph 7.a. of the PFA order: "[Grandparents] will stay away from [Father] and [the Children] except for any visitation or custody with Children as ordered by the Court in existence entered prior to this date or hereafter."

directed that the visitation period was for Mother alone.  No other persons, except for the translator and the security guard, were permitted to be present. *See id*.  The order specifically prohibited Grandparents from being on the grounds of the church during Mother's visitation period. *See id*.

When Grandparents attended Mother's visitation period with her on December 28, 2015, the security guard called the police.[5]  Father brought an action for violation of the amended PFA order.  The district attorney brought an action for indirect criminal contempt.

Grandparents responded by asserting that the stipulation was ambiguous, and filing a motion for the trial court to vacate or clarify the order. The stipulated PFA order forbade **any** contact between Grandparents and Grandchildren when they were with Father (or direct contact with Father). *See* Stipulated PFA Order, 10/23/15, at ¶ 7, d.  Another provision granted Grandparents no greater rights of visitation than Mother had. *See id*., at ¶ 5(a). Grandparents argued these two provisions conflicted, resulting in an ambiguous order.

Following a hearing, the trial court found the provisions to be ambiguous and dismissed the contempt charges against Grandparents.  *See* Order,

---

[5] Father also testified to Grandparents' presence at the church earlier in December.  However, the Grandparents left at the direction of the security guard, and no arrests occurred at this earlier event. *See* N.T., 2/11/16, at 16-17.

2/11/16. On May 2, 2016, following up on the trial court's finding of ambiguity, Grandparents filed a motion to clarify or dismiss the PFA order.

After a hearing, at the suggestion of counsel for Father, the trial court struck the provision declaring that Grandparents had no greater rights than Mother. The court directed counsel to "[s]end in an order." *See* N.T. Hearing, 12/15/16, at 12. No one did. However, on December 27, 2016 Grandparents filed a motion for reconsideration, which the trial court denied on January 11, 2017.

Seven months later, in August of 2017, Grandparents assert, they filed a writ of mandamus asking this Court to issue an order on the motion to clarify or dismiss. *See* Grandparents Brief, at 11. We are unable to locate such a writ in this Court's docket.[6] The trial court also refers to a mandamus action, but does not include a citation for it in the record. *See* Trial Court Opinion, at 7.

In any event, the docket confirms that on September 11, 2017, the trial court filed what might be characterized as a "catch–up" order, which reaffirmed the court's oral decision from the bench on December 15, 2016, striking the "no greater rights" provision, and declining to make any other alterations to the stipulated order. *See* Order, 9/11/17, 1-2. On September 29, 2017, Grandparents filed a notice of appeal from the order of September

_____

[6] Grandparents' writ of mandamus is also problematic for multiple reasons, not the least of which is that the writ has been abolished. *See* Pa.R.A.P. 1502.

- 6 -

11. Both Appellants and the trial court complied with Rule 1925. ***See*** Pa.R.A.P. 1925.

Grandparents present one question for our review:

Whether the [trial] court abused its discretion when it denied [G]randparents due process by modifying the stipulated PFA order in a manner that negated the stipulation, and yet precluded hearing [sic] to correct the error on the ground that the order was stipulated[?]

Grandparents' Brief, at 9 (superfluous capitalization omitted).

The Protection from Abuse Act is codified at 23 Pa.C.S.A. §§ 6101-6109.

Our standard of review for PFA orders is well settled. "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." We review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevails before the PFA court. The petitioner need only establish her case by a preponderance of the evidence to be entitled to relief.

Furthermore, we must defer to the credibility determinations of the trial court. Finally, we note that a PFA petitioner is not required to file a police report, nor is it necessary for her to introduce medical evidence of an injury. **The petitioner's testimony is sufficient if it is believed by the trial court.**

***Id.*** (internal citations omitted) (emphasis added).

Grandparents claim a denial of due process. However, they failed to include this claim in their statement of errors. Instead, they raise three issues asserting the court erred by not modifying the stipulated PFA order, and one challenge to the length of time the court took to resolve their motion to vacate or clarify the PFA order. As a result, the trial court does not address the issue of due process in its opinion. Accordingly, the issue is waived. ***See Greater***

- 7 -

***Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.***, 88 A.3d 222, 224

(Pa. Super. 2014) (*en banc*).

>   Moreover, Grandparents' due process claim would not merit relief.[7]
>
>   Procedural due process is not a fixed precept, but rather, a flexible concept that "calls for such procedural protections as the particular situation demands." ***Morrissey v. Brewer****,* 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L.Ed.2d 484 (1972). Our Supreme Court reiterated the relevant considerations in ***In re Merlo****,* 609 Pa. 598, 17 A.3d 869, 872 (2011).
>
>>   Determining what process is due in a particular situation
>>
>>   generally requires consideration of three distinct factors: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

***Ferko-Fox v. Fox***, 68 A.3d 917, 922 (Pa. Super. 2013) (*per curiam*) (citation

omitted).

    Here, the trial court scheduled a hearing on Grandparents' motion to

vacate or modify the stipulated PFA order. At that time, counsel for

Grandparents asserted, "[w]e're not looking to put on testimony … [w]e're

---

[7] Notably, the due process argument did not prevail in either of the two cases cited by Grandparents. ***See Universal Builders Supply, Inc. v. Shaler Highlands Corp.***, 175 A.2d 58, 60 (Pa. 1961) (no reversible error); ***Lower Frederick Twp. v. Clemmer***, 543 A.2d 502, 513 (Pa. 1988) (cited as *dicta* in dissent.)

asking [the court] to just rule on the law and the [m]otion itself." N.T., 12/15/16, at 8. Therefore, the claimed due process error came at the request of Grandparents themselves.

Moreover, the over-arching claim to visitation rights advanced by Grandparents in this appeal rests on a demonstrably false premise. The essence of Grandparents' argument is that they only entered into a stipulation as a compromise to obtain visitation rights to see their grandchildren. *See*, *e.g.*, Grandparents' Brief, at 10, 13, 16. They maintain that once they complained that the stipulation was ambiguous, and the trial court agreed with them (incidentally saving them from the penalties for contempt); the court deleted the stipulated language they had relied on in the first place. Therefore, they claim, the court improperly denied them both the visitation rights that they had sought to achieve in the stipulation, and the opportunity for a new hearing on the stipulation.

The record belies their claim. To the contrary, the stipulated PFA order amounted to a stay-away provision, to the effect that Grandparents would stay away from their grandchildren while they were with their Father. In addition, the Grandparents explicitly agreed not to "bother," "harass," or "stalk" Father, or "steal [the Children] or take them to Argentina, or run[]away some place with them." N.T., Hearing, 10/23/15, at 11.

Importantly, it was expressly understood that visitation rights were to be addressed in separate custody proceedings, not in the stipulated PFA order.

*See id.* at 16 (confirming counsel for both parties' agreement that the PFA order was subject to "any existing Custody Order"). A Spanish interpreter explained the entire arrangement to Grandparents in their native language. *See id.* at 17. There is no basis in the record for the claim that Grandparents did not understand what they were agreeing to in settling the PFA order by stipulation.

One of Father's attorneys explicitly noted that "[T]he [G]randparents currently are not allowed–they're not present–**they're not allowed to be present at the supervised visitation and this does not change that**." *Id.* at 16 (emphasis added). The best explanation of the now-deleted language is provided by the trial court, who observed, "No, but if, God forbid, something happens to their daughter, they would have rights under the law to apply for grandparents' rights." N.T., Hearing, 10/23/15, at 16.

Viewing the evidence in the light most favorable to Father as the prevailing party, as we must under our standard of review, we discern no abuse of discretion or error of law in the process used or the conclusion reached by the trial court. Appellants' due process claim is waived and would not merit relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/23/19</u>