2014 COA 120

**Deborah MACKALL and Herbert Hutchins, Plaintiffs–Appellants,**

**v.**

**JPMORGAN CHASE BANK, N.A.; Chase Home Finance LLC; and Mortgage Electronic Registration Systems, Inc., Defendants–Appellees.**

**Court of Appeals No. 13CA1427**

Colorado Court of Appeals,
Div. V.

Announced September 11, 2014

Rehearing Denied October 9, 2014

Deborah Mackall and Herbert Hutchins, Pro Se

Bryan Cave LLP, Stephen D. Rynerson, Sean M. Ward, Denver, Colorado, for Defendant–Appellees.

Opinion by JUDGE ASHBY

¶ 1 Plaintiffs, Deborah Mackall and Herbert Hutchins, appeal the district court's judgment dismissing their complaint pursuant to C.R.C.P. 12(b)(5). As an issue of first impression in Colorado, we first address whether a debtor who fails to disclose a state court claim to the bankruptcy court lacks standing to assert that claim after the bankruptcy case is dismissed. Because we conclude that a debtor has standing in this situation, we proceed to address two additional

issues of first impression in Colorado: (1) whether a bankruptcy court's order allowing a creditor's proof of claim survives the dismissal of the bankruptcy proceedings prior to discharge from bankruptcy, and if so, (2) whether the order has preclusive effect in state court. We conclude that under the facts presented here, the answer to both of these additional questions is yes. Based on these conclusions, among others, we affirm.

## I. Background

¶ 2 Plaintiffs purchased a home and subsequently refinanced it. In the course of refinancing, they executed a promissory note to a lender. The note was then transferred by a series of assignments to defendant, Mortgage Electronic Registration Systems, Inc. (MERS).

¶ 3 In 2009, plaintiffs became unable to make scheduled payments on the loan and worked with defendant, Chase Home Finance LLC (CHF), the loan servicer, to set up a modified payment plan. Although plaintiffs made several payments in accordance with the modified payment plan, CHF nevertheless initiated foreclosure proceedings in 2010 and sought a C.R.C.P. 120 order authorizing sale of the house for default on the loan agreement. The C.R.C.P. 120 court dismissed the action without prejudice. CHF then filed a second C.R.C.P. 120 action that the court also dismissed without prejudice.

¶ 4 In January 2012, MERS assigned the note to defendant, JPMorgan Chase Bank, N.A. (Chase), which then filed a third C.R.C.P. 120 action. After holding a hearing, the C.R.C.P. 120 court ruled that Chase was the holder of the original, authentic, and enforceable promissory note and that plaintiffs were probably in default. Accordingly, in June 2012, the court issued a written order authorizing Chase to sell the house.

¶ 5 Shortly thereafter, plaintiffs filed a Chapter 13 petition for bankruptcy in federal bankruptcy court. Chase filed a proof of claim in the bankruptcy case based on the promissory note, and plaintiffs objected. After holding a hearing on plaintiffs' objection, the bankruptcy court allowed Chase's proof of claim because it determined that Chase was in possession of the original, authentic, and enforceable note, and was the proper party to enforce it. Later, the bankruptcy court dismissed the bankruptcy proceeding prior to confirmation of a plan or discharge because plaintiffs had failed to comply with the court's order requiring them to submit an amended bankruptcy plan.

¶ 6 In February 2013, plaintiffs filed the civil complaint at issue here. They asserted numerous claims against Chase, alleging that Chase's note was fraudulent and that Chase was not the proper party to enforce it. They also requested that the district court vacate the order authorizing sale. Chase moved to dismiss pursuant to C.R.C.P. 12(b)(5). The district court granted the motion. It ruled that some claims were precluded by both the C.R.C.P. 120 order authorizing sale and the bankruptcy court order allowing Chase's proof of claim, some failed as a matter of law, and some were not properly before the court.

¶ 7 Plaintiffs appeal the dismissal of some of their claims.

## II. Standing

¶ 8 Initially, Chase contends that plaintiffs lack standing to assert any claims against it because all of the claims were actionable when plaintiffs filed for bankruptcy, and plaintiffs failed to disclose the claims to the bankruptcy court. Chase did not raise this issue below, but standing is a jurisdictional issue that parties or the court may raise at any time, including for the first time on appeal. *See Anson v. Trujillo,* 56 P.3d 114, 117 (Colo.App.2002). Therefore, we address this issue and conclude that plaintiffs have standing to assert their claims against Chase.

¶ 9 When a debtor files a bankruptcy petition, all of the debtor's property, including all legal claims that the debtor could have pursued at the time of filing, becomes part of the bankruptcy estate. *See* 11 U.S.C. § 541 (2012); *First Horizon Merch. Servs., Inc. v. Wellspring Capital Mgmt., LLC,* 166 P.3d 166, 180 (Colo.App.2007). Even though this happens automatically, the debtor must disclose such legal claims to the bankruptcy court. *See* 11 U.S.C. § 521(1) (2012); *Eastman v. Union Pac. R.R. Co.,* 493 F.3d 1151, 1159 (10th Cir.2007).

¶ 10 Once constituted, only the bankruptcy estate has standing to assert claims that are part of the estate. *See First Horizon Merch.Servs.*, 166 P.3d at 180. If the bankruptcy court dismisses the case before there is a confirmed plan or discharge, that dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." 11 U.S.C. § 349(b)(3) (2012). All of the property that was transferred from the debtor to the estate revests in the debtor regardless of whether the debtor disclosed it to the bankruptcy court. *See, e.g., Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 485 (2d Cir.2014) (section 349(b)(3) "makes no distinction between those [assets] that were listed in the debtor's schedule of assets and those [assets] that were not; what is revested in the immediately-pre-petition owner or owners is 'the property of the estate.'" (quoting § 349(b)(3))). Thus, where a bankruptcy case is dismissed, the Bankruptcy Code seems to unequivocally grant a debtor standing to assert any claim that it possessed before it filed for bankruptcy, regardless of whether it disclosed the claim to the bankruptcy court during the bankruptcy proceedings.

¶ 11 Despite the plain language of section 349(b)(3), some courts have held that a debtor's failure to disclose property to the bankruptcy court may result in that property remaining with the bankruptcy estate even after the bankruptcy proceeding is dismissed. In *Kunica v. St. Jean Financial, Inc.*, 233 B.R. 46 (S.D.N.Y.1999), the court held that 11 U.S.C. § 554 (2012) overrides section 349(b)(3) based on the following reasoning. Section 554 provides that the bankruptcy trustee can administer the property of the estate or decide to abandon it to the debtor. *See* 11 U.S.C. § 554(a). Any *disclosed* property that is not administered automatically is abandoned to the debtor. *See* 11 U.S.C. 554(c). But *undisclosed* property (1) can neither be administered nor abandoned by the trustee and (2) is not automatically abandoned to the debtor if not administered. Therefore, undisclosed property remains property of the estate even after a dismissal. *See* U.S.C. § 554(d) ("[P]roperty of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."); *Kunica*, 233 B.R. at 53. And because only the estate has standing to assert a claim that is the property of the estate, a debtor who fails to disclose a claim loses standing to assert that claim even after the bankruptcy case is dismissed. *See Kunica*, 233 B.R. at 53.

¶ 12 The *Kunica* court's decision that section 554 overrides the plain language of section 349(b)(3) also turned on "[a] number of factors particular to [that] action [that] militate[d] in favor of [the court's] conclusion." *Id.* at 55. First, "given that [the debtor] obtained its dismissal after its case was fully administered and all of its assets scheduled, it arguably obtained the functional equivalent of a discharge." *Id.* Second, because it was unclear whether the debtor could have obtained a discharge as a matter of law, a dismissal after full administration of the debtor's assets may have been the closest thing to a discharge that the debtor could have received. *Id.* Third, had the bankruptcy court known about the undisclosed claims, its decision to dismiss the case might have been different. *Id.* Accordingly, the *Kunica* court was reluctant to allow the debtor to conceal the claims and their potential value from the bankruptcy court, obtain the functional equivalent of a discharge of its debts based on an accounting of fewer than all of its assets, and retain standing to assert the concealed claims after the effective discharge. *See id.* at 53–54 ("[D]ismissal of a bankruptcy case ... as opposed to a discharge, should not provide a debtor with a safe harbor against lack of standing to pursue causes of action that were not properly disclosed.").

¶ 13 Relying on *Kunica*, a division of the Texas Court of Appeals came to the same conclusion, observing that "[f]ull disclosure is the most critical element of the bankruptcy system because without it the basic system of marshaling assets and the distribution of proceeds to creditors would be an impossible task." *Kilpatrick v. Kilpatrick*, 205 S.W.3d 690, 702 (Tex.App.2006).

¶ 14 Many courts, however, have disagreed with this view. In *Crawford*, the Second Circuit thoroughly addressed this precise is-

sue and explicitly rejected the reasoning in *Kunica*. The Second Circuit noted that section 349(b)(3) makes no distinction between property that the debtor disclosed or failed to disclose. *Crawford*, 758 F.3d at 484–85. And it refused to read section 554 as overriding the broad and clear language of section 349(b)(3) revesting the property of the estate in the debtor upon dismissal. *Id.* at 484 ("We cannot view § 554(d) as overriding § 349.").

¶ 15 Also examining the legislative history of section 349, the Second Circuit determined that Congress intended that dismissal would "undo the bankruptcy case." *Crawford*, 758 F.3d at 485. Accordingly, upon dismissal, there is no longer a bankruptcy estate, and there can no longer be any property of the estate. *See id.* at 484 ("As there no longer remains any 'property of the estate' after a case has been dismissed, § 554 has no applicability after a dismissal."); *see also* 11 U.S.C. § 554 (dealing entirely with property of the estate).

¶ 16 Other courts have come to the same conclusion as the Second Circuit, and have also explicitly rejected the reasoning of *Kunica* and *Kilpatrick*. *See Ass'n Res., Inc. v. Wall*, 298 Conn. 145, 2 A.3d 873, 888–90 (Conn.2010) (holding that section 554 does not override section 349 because unlike in *Kunica*, "the Bankruptcy Court had dismissed [debtor's] petitions prior to their administration"); *B.N. Realty Assocs. v. Lichtenstein*, 21 A.D.3d 793, 801 N.Y.S.2d 271, 275–76 (N.Y.App.Div.2005) (holding that all property regardless of disclosure revests in the debtor upon dismissal and declining to follow *Kunica* because the debtor "did not obtain 'the functional equivalent of a discharge'"); *Norris v. Brookshire Grocery Co.*, 362 S.W.3d 226, 231–32 (Tex.App.2012) (holding that all property regardless of disclosure revests in the debtor upon dismissal and declining to follow *Kunica* and *Kilpatrick* because the debtor did not benefit from, and the creditors were not impaired by, the bankruptcy proceedings or the dismissal).

¶ 17 We recognize that in *In re Marriage of Yates*, 148 P.3d 304 (Colo.App.2006), another division of this court held that a debtor who appealed the division of marital property lost standing to pursue that appeal because the claim became the property of the bankruptcy estate when he subsequently filed for bankruptcy. 148 P.3d at 314. However, in that case it is unclear whether the bankruptcy case had been dismissed and, regardless, the division did not analyze the effect of section 349. *Id.*

¶ 18 We find persuasive the analysis of the Second Circuit and other courts that give effect to the plain language of section 349.

¶ 19 The record does not show that plaintiffs received the functional equivalent of a discharge from the bankruptcy court, that they unfairly benefited from the dismissal, or that the bankruptcy court's decision to dismiss the case would have been affected had plaintiffs disclosed the claims. Thus, we conclude that pursuant to section 349(b)(3), the dismissal of the bankruptcy petition revested the claims in plaintiffs, and they had standing to bring those claims against Chase after the dismissal. To the extent that this conclusion conflicts with *Yates*, we choose not to follow it. *See In re Estate of Becker*, 32 P.3d 557, 563 (Colo.App.2000) (a division of the Court of Appeals is not bound to follow the precedent established by another division), *aff'd sub nom. In re Estate of DeWitt*, 54 P.3d 849 (Colo.2002).

### III. The District Court's Dismissal

¶ 20 The district court dismissed some of plaintiffs' claims based on issue preclusion, and others for failure to state a claim. First, we address together the claims that the district court dismissed based on issue preclusion. Then, we address individually the claims that the district court dismissed for failure to state proper claims for relief. We affirm the district court's ruling concerning each claim.

### A. Issue Preclusion

¶ 21 The district court held that both the C.R.C.P. 120 order authorizing sale and the bankruptcy court order allowing Chase's proof of claim precluded plaintiffs' claims for (1) deceptive and fraudulent use of an electronic mortgage registry; (2) deceptive and fraudulent recording of the assignment; (3) violations of the federal Fair Debt Collections Practices Act; (4) forgery; (5) fraud; and (6) fraud upon the court.

¶ 22 Specifically, the district court held that an essential element of all of these claims was that Chase did not possess an original and authentic promissory note that it could enforce against plaintiffs. The district court then concluded that, because both the C.R.C.P. 120 court and the bankruptcy court had determined that Chase possessed such a note, plaintiffs' claims were precluded.

¶ 23 Plaintiffs do not dispute that the six claims listed above were precluded if Chase could enforce the note against them. Rather, plaintiffs argue only that the district court erred by giving the C.R.C.P. 120 and bankruptcy court rulings preclusive effect.

¶ 24 Because the district court relied on both the C.R.C.P. 120 and bankruptcy court rulings in all relevant instances, we may affirm if either one of those rulings had preclusive effect. *See U.S. Fax Law Ctr., Inc. v. Myron Corp.*, 159 P.3d 745, 746 (appellate court may affirm on different grounds than those cited by the trial court). We conclude that the bankruptcy court ruling had preclusive effect and therefore need not address the C.R.C.P. 120 court ruling.

### 1. Federal Issue Preclusion Standards Apply

■ ¶ 25 Issue preclusion, a form of res judicata, bars relitigation of an issue that was already determined in a prior proceeding. *See New Hampshire v. Maine*, 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo.2001).

■ ¶ 26 Bankruptcy courts are federal courts that interpret the Bankruptcy Code, a set of federal statutes. We are aware of no Colorado case addressing whether Colorado or federal authority determines whether a ruling by a federal court in a federal question case has preclusive effect in state court. However, the Supreme Court has held that it has the final say on this question. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) (although "no federal textual provision addresses the claim-preclusive effect of a federal-court judgment in a federal-question case, ... we have long held that States cannot give those judgments merely whatever effect they would give their own judgments, but must accord them the effect that this Court prescribes"). And, according to the Supreme Court, "[s]tate courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions on issues of federal law." *Heck v. Humphrey*, 512 U.S. 477, 488 n. 9, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (addressing issue and claim preclusion); *see Barrow v. D.A.N. Joint Venture Props. of N. Carolina, LLC*, 755 S.E.2d 641, 644–45 (N.C.Ct.App.2014) (federal common law governs preclusive effect of federal court judgments, including bankruptcy court orders). Therefore, we look to federal law to determine the preclusive effect of the bankruptcy court's order allowing Chase's proof of claim and determining that its note was original, authentic, and enforceable against plaintiffs. *See Barrow*, 755 S.E.2d at 644–45.

### 2. The Bankruptcy Court's Order Had Preclusive Effect

■ ¶ 27 Under federal issue preclusion standards, "an issue actually litigated and determined by a valid and final judgment, if essential to the judgment, binds the same parties in any subsequent action, whether on the same or a different claim." *In re Kane*, 254 F.3d 325, 328 (1st Cir.2001) (internal quotation marks omitted).

■ ¶ 28 Plaintiffs argue here that the bankruptcy court's order allowing Chase's claim was not final for purposes of issue preclusion because the subsequent dismissal of the bankruptcy case vacated it. We disagree.

■ ¶ 29 An order allowing a proof of claim is not one of the four enumerated orders that the dismissal of a bankruptcy case vacates pursuant to 11 U.S.C. § 349(b)(2). *See* 11 U.S.C. §§ 501, 502 (2012) (permitting creditors to file proofs of claim and setting out the standards that courts must follow to determine whether to allow or disallow them); 11 U.S.C. § 349(b)(2) (dismissal "vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title"). Therefore, an order allowing a proof of claim survives dismissal. *See In re Pavelich*, 229 B.R. 777, 780 (B.A.P. 9th Cir.1999) ("[T]he

omission of an order from the list in § 349(b) ordinarily means that dismissal does not affect the omitted order."); *see also In re Ramirez,* 283 B.R. 156, 160 (Bankr.S.D.N.Y. 2002) (section 349(b)(2) vacates only the four enumerated kinds of orders).

¶ 30 In addition to surviving dismissal, courts have held that "the allowance or disallowance of a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata." *Siegel v. Fed. Home Loan Mortg. Corp.,* 143 F.3d 525, 529 (9th Cir.1998) (internal quotations omitted); *see In re Bevan,* 327 F.3d 994, 997 (9th Cir.2003); *Ramirez,* 283 B.R. at 160–61 (bankruptcy court order allowing claim in case that was later dismissed "is ripe for preclusion under the doctrine of *res judicata*"); *Nathanson v. Hecker,* 99 Cal.App.4th 1158, 121 Cal.Rptr.2d 773, 779 (2002) (bankruptcy court order allowing claim before bankruptcy case was dismissed was final and had preclusive effect in state court).

¶ 31 We recognize that some courts have held that a *disallowance* of a proof of claim in a bankruptcy case does not have preclusive effect where the bankruptcy case is subsequently dismissed. We do not find these cases persuasive or applicable to the facts before us because in each of these cases the debtor (1) obtained a favorable bankruptcy court order disallowing a creditor's claim; (2) allowed or caused the bankruptcy case to be dismissed; and (3) then sought to use the favorable order to preclusive and advantageous effect in a separate and subsequent proceeding.

¶ 32 For instance, in *Williams v. Stewart,* 97 Md.App. 620, 631 A.2d 517 (1993), a case on which plaintiffs rely, giving the bankruptcy court order preclusive effect would have been particularly unfair. In that case, the district court entered a money judgment against the debtors and in favor of the creditor. *Id.* at 518. The debtors then filed for bankruptcy and the district court struck the money judgment based on the bankruptcy filing. *Id.* In the bankruptcy case, the creditor filed a proof of claim based on the debt that was the subject of the district court judgment and the judgment itself. *Id.* at 519. The bankruptcy court disallowed the claim because the district court judgment

had been stricken, and later dismissed the case before discharge due to the debtors' failure to file an acceptable disclosure statement and reorganization plan. *Id.* at 519–20. After dismissal, when the creditor returned to the district court to reinstate the original district court judgment, the debtors sought to use the bankruptcy court's ruling disallowing the proof of claim to preclude the reinstatement. *Id.* at 520. Under those circumstances, the appellate court determined that the bankruptcy court's order did not have preclusive effect in state court. *Id.* at 522.

¶ 33 Although other courts have come to the same conclusion as the *Williams* court, they have done so to prevent a debtor from using bankruptcy proceedings to obtain a favorable order, abandoning bankruptcy proceedings with the ability to refile, and then seeking to use the favorable bankruptcy order to preclusive effect in another case. *See In re Mirzai,* 271 B.R. 647, 654 (C.D.Cal. 2001) (disallowance of the creditor's proof of claim was not entitled to preclusive effect after dismissal because the debtor "was not entitled to the benefits of bankruptcy without confirmation of a plan or discharge"), *aff'd,* 36 Fed.Appx. 619 (9th Cir.2002); *In re Case,* 27 B.R. 844, 847–48 (D.S.D.1983) (after bankruptcy court disallowed the creditor's proof of claim, it denied the debtor's request for dismissal of bankruptcy case with disallowance of claim in effect because the bankruptcy court was "not persuaded that the interests of justice would be served by insulating debtors from claims of liability under state law after the debtors voluntarily withdraw from the jurisdiction of [the bankruptcy court] without proceeding to discharge"). Plaintiffs do not cite, and we are unaware of, a case in which a court held that a bankruptcy court order that was unfavorable to the debtor did not have preclusive effect.

¶ 34 Furthermore, cases reaching different conclusions on the preclusive effect of a bankruptcy court order allowing or disallowing a proof of claim agree that a purpose of the Bankruptcy Code is to prevent a debtor who files a bankruptcy petition from enjoying the benefits of bankruptcy proceedings without obtaining a discharge. *See Ramirez,* 283 B.R. at 160 ("If a party fails to await the

completion of a bankruptcy case[,] he or she should not benefit from litigation pursued under the auspice of the Bankruptcy Code and walk away with one less lien or with transfers that had, prior to a ruling of a bankruptcy court, been made without a qualm."); *Mirzai*, 271 B.R. at 654; *Case*, 27 B.R. at 847–48.

¶ 35 In this case, giving preclusive effect to the bankruptcy court's order would not provide plaintiffs (the debtors) any advantage in a subsequent proceeding. It would instead prevent plaintiffs from relitigating Chase's ability to enforce the note it holds.

¶ 36 Accordingly, we conclude that the bankruptcy court's order had preclusive effect, and that the district court therefore properly dismissed plaintiffs' six claims listed above.[1] Based on this conclusion we need not address Chase's argument that judicial estoppel bars these claims or the propriety of the district court's ruling that the C.R.C.P. 120 court's order also had preclusive effect. Nevertheless, to provide guidance to litigants in future cases, we note that because C.R.C.P. 120 proceedings are not adversarial, they cannot give rise to a final judgment that has preclusive effect. *See United Guar. Residential Ins. Co. v. Vanderlaan*, 819 P.2d 1103, 1105 (Colo.App.1991) (because "proceedings pursuant to C.R.C.P. 120 are not adversarial in nature, are not final, and generally no appeal may be taken to review the resulting orders ... neither the principles of *res judicata* nor collateral estoppel" apply).

### B. Failure to State a Claim

¶ 37 Plaintiffs next argue that the district court erred by dismissing, for failure to state a claim, their claims for (1) abuse of process; (2) slander of title; (3) breach of contract; (4) promissory estoppel; (5) breach of the implied covenant of good faith and fair dealing; and (6) intentional infliction of emotional distress. We disagree.

¶ 38 When evaluating a motion to dismiss for failure to state a claim, a court may consider only those matters stated in the complaint, must accept the factual allegations as true, and must view those allegations in the light most favorable to the plaintiff. *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo.1999). A court may grant such a motion to dismiss only if the facts as alleged in the complaint fail to support a claim that would entitle the plaintiff to relief. *See Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 385–86 (Colo.2001). We review a district court's dismissal for failure to state a claim de novo. *Sweeney v. United Artists Theater Circuit, Inc.*, 119 P.3d 538, 539 (Colo.App.2005).

#### 1. Abuse of Process

¶ 39 A valid abuse of process claim must allege "(1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, i.e., use of a legal proceeding in an improper manner; and (3) resulting damage." *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 202 (Colo.App.1998).

¶ 40 Plaintiffs' complaint alleges that Chase's filing of serial C.R.C.P. 120 actions constituted an abuse of process. We agree with the district court that the complaint fails to allege that Chase sought to use the C.R.C.P. 120 process for any reason other than to obtain an order authorizing sale, a proper purpose for that process. *See* C.R.C.P. 120; *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App.2010) ("[A]n ulterior purpose is one that the legal proceeding was not designed to accomplish."), *aff'd*, 2012 CO 50, 279 P.3d 658. Because the complaint fails to allege that Chase filed the C.R.C.P. 120 actions for any purpose other than to obtain an order authorizing sale, the district court properly dismissed plaintiffs' abuse of process claim.

#### 2. Slander of Title

¶ 41 A valid slander of title claim must allege "(1) slanderous words; (2) falsity; (3) malice; and (4) special damages." *Skyland Metro. Dist. v. Mountain W. Enter., LLC*, 184 P.3d 106, 131 (Colo.App.2007).

---

1. To the extent that plaintiffs argue that the bankruptcy court's ruling was not preclusive because it was not a core proceeding, they are incorrect. *See* 28 U.S.C. § 157(b)(2)(B) (2012) (providing that "[c]ore proceedings include ... allowance or disallowance of claims against the estate"); *Marshall v. Marshall*, 547 U.S. 293, 303 n. 2, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006).

Special damages exist when there was some effect on the owner's ability to sell the property. *Id.* To show special damages, "[a]t a minimum, the property must be on the market for sale, and the tort must create a cloud upon the title; then the expense of legal proceedings to remove the cloud on title satisfies the damages requirement." *Id.*

¶ 42 Plaintiffs' complaint alleges that Chase's conduct "cast a cloud over the unobstructed right to the property, and damages the personal reputation of the homeowner and the reputation of the property." Importantly, the complaint fails to allege that the property was on the market for sale. Therefore, the complaint fails to allege special damages and the district court properly dismissed it for failure to state a claim.

### 3. Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Promissory Estoppel

¶ 43 These three claims are based on the allegation that plaintiffs and Chase contracted to modify the loan agreement, either by the written modified payment plan or orally, and that Chase breached that contract. The district court determined that there was no enforceable contract to modify the loan agreement because the written modified payment plan, pursuant to its terms, did not modify the loan agreement, and the statute of frauds applied to bar any unwritten modification of the loan agreement.

¶ 44 On appeal, plaintiffs contest only the district court's application of the statute of frauds. Plaintiffs argue that the statute of frauds does not apply to bar an unwritten modification of the loan agreement here (1) because Chase is not a creditor and plaintiffs are not debtors as those terms are defined by the statute of frauds and (2) based on the doctrines of promissory estoppel and substantial partial performance. We disagree with these arguments.

¶ 45 The statute of frauds defines a creditor as "a financial institution which offers to extend, is asked to extend, or extends credit under a credit agreement with a debtor." § 38–10–124(1)(b), C.R.S.2013. Plaintiffs are correct that they initially sought and obtained credit in exchange for the promissory note from the lender, not Chase. But the promissory note was eventually assigned to Chase. As an assignee, Chase stands in the shoes of the assignor. *See Tivoli Ventures, Inc. v. Bumann,* 870 P.2d 1244, 1248 (Colo. 1994) (where statute is silent on application of statute of limitations to assignees, court applies the common law principle that "an assignee stands in the shoes of the assignor"). And because the lender, before the assignment, was a creditor as defined by section 38–10–124(1)(b), its assignee, Chase, is now a creditor.

¶ 46 We also conclude that plaintiffs are debtors because they owe money to a creditor, Chase. *See* § 38–10–124(1)(c) (" 'Debtor' means a person who or entity which obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor.").

¶ 47 And, because section 38–10–124(3) provides that "[a] credit agreement may not be implied under any circumstances . . . from performance or partial performance by or on behalf of the creditor or debtor, or by promissory estoppel," we reject plaintiffs' partial performance and promissory estoppel arguments.

¶ 48 Thus, the district court properly dismissed plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.

### 4. Intentional Infliction of Emotional Distress

¶ 49 A claim for intentional infliction of emotional distress requires proof that "(1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Archer v. Farmer Bros. Co.,* 70 P.3d 495, 499 (Colo.App.2002), *aff'd,* 90 P.3d 228 (Colo.2004).

¶ 50 Concerning Chase's conduct, the complaint alleges only that Chase sought to enforce the promissory note against plaintiffs. Because Chase was within its rights to do so, we conclude that this conduct was not extreme and outrageous. *See Culpepper v. Pearl St. Bldg., Inc.,* 877 P.2d 877, 882 (Colo. 1994) (outrageous conduct is conduct that is

"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (internal quotation marks omitted)). Therefore, the court properly dismissed plaintiffs' intentional infliction of emotional distress claim.

### 5. C.R.C.P. 120 Court Ruling

¶ 51 In its order dismissing plaintiffs' claims, the district court denied plaintiffs relief from the C.R.C.P. 120 court's rulings denying their (1) motion to vacate the order authorizing sale; (2) motion for a forensic examination of the note; and (3) motion seeking injunctive and equitable relief. Because plaintiffs present no argument or authority challenging these rulings by the district court, we do not address them. *See People v. Diefenderfer*, 784 P.2d 741, 746 n. 2 (Colo.1989).

### C. Amendment

¶ 52 Finally, plaintiffs contend that the district court erred by denying their request to amend the complaint pursuant to C.R.C.P. 15(a). However, the record contains neither a cognizable request to amend by plaintiffs nor a denial by the district court.

¶ 53 At the conclusion of their response to Chase's motion to dismiss, plaintiffs asked the district court to grant them leave to amend their complaint "[i]f [the district court] deems [it] necessary." However, plaintiffs never filed an amended complaint. Accordingly, there was never a C.R.C.P. 15(a) motion to amend pending before the district court. The district court took no action preventing plaintiffs from amending their complaint. Plaintiffs simply failed to act.

¶ 54 As plaintiffs note on appeal, they did not need leave of the district court to file an amended complaint. *See* C.R.C.P. 15(a) ("A party may amend his pleading once as a matter of course at any time before a responsive pleading is filed...."). They may not lay their failure to do so at the feet of the district court.

### IV. Costs and Conclusion

¶ 55 Chase requests an award of its "reasonable costs incurred in the defense of the judgment on appeal." It is entitled to costs pursuant to C.A.R. 39.

¶ 56 The district court's judgment is affirmed.

JUDGE HAWTHORNE and JUDGE J. JONES concur.