### In re the MARRIAGE OF Greg BERTSCH, Appellee,

and

### Julie Bertsch, Appellant.

### No. 02CA0888.

Colorado Court of Appeals, Div. I.

Jan. 15, 2004.

As Modified on Denial of Rehearing Feb. 12, 2004.

Certiorari Denied Aug. 16, 2004.*

---

* JUSTICE COATS would grant as to the following issues:

Whether the court of appeals which found child abuse (thereby implicitly reversing the trial court finding of no child abuse) erred in nevertheless affirming the award of sole decision-making to the perpetrator and whether this conclusion results in an absurd construction of section 14-10-124(1.5)(b)(IV), 5 C.R.S. (2003) and places children in danger.

Alpern, Myers, Stuart, Scheuerman & Hickey, LLC, Elizabeth Tormoen Hickey, Colorado Springs, Colorado, for Appellee.

M. Patricia Marrison, P.C., M. Patricia Marrison, Shasta R. Smith, Colorado Springs, Colorado, for Appellant.

Gerald A. Kimble, Jr., Guardian Ad Litem.

Opinion by Judge DAILEY.

Julie Bertsch (wife) appeals from the permanent orders allocating parental responsibilities of the parties' two sons to Greg Bertsch (husband). We affirm.

## I.

■ Wife contends that the trial court abused its discretion in allocating primary parental responsibility and all decision-making responsibility to husband, contrary to the provisions of § 14–10–124(1.5)(b)(IV)–(V), C.R.S.2003. We disagree.

Section 14–10–124(1.5), C.R.S.2003, provides that a court is to determine the allocation of parental responsibilities, including parenting time and decision-making responsibilities, in accordance with the best interests of the child. In determining parenting time

Whether an award of sole decision-making to the Father-Respondent, even after the Father-Respondent had engaged in spousal abuse, was contrary to section 14-10-124(1.5)(b)(V), results in absurdity, and encourages silence in the victim.

Whether the court of appeals erred in adopting the trial court's finding that the plain language of section 14-10 124(1.5)(b)(IV) and (V) indicates that the Legislature only intended to prevent mutual decision-making when there has been abuse, rather than requiring that only the non-abuser receive decision-making authority. Such an interpretation, while consistent with the literal language of the statute, is absurd for different reasons with respect to spousal abusers than child abusers. Accordingly, did the court of appeals err in failing to distinguish perpetrators of child abuse from perpetrators of spousal abuse in preventing mutual decision-making.

and decision-making responsibility, the court is to consider a number of factors, including whether one of the parties has been shown "by credible evidence" to be a perpetrator of child abuse or spouse abuse. Section 14–10–124(1.5)(a)(IX)–(X), (b)(IV)–(V), C.R.S.2003; *see In re Marriage of McCaulley-Elfert,* 70 P.3d 590, 593 (Colo.App.2003)(in this context, "by credible evidence" means no more than by a preponderance of the evidence).

With respect to decision-making responsibility, if the court makes a finding "that one of the parties has been a perpetrator of child abuse or neglect, then it shall not be in the best interests of the child to allocate mutual decision-making with respect to any issue over the objection of the other party or the representative of the child." Section 14–10–124(1.5)(b)(IV). Similarly, under § 14–10–124(1.5)(b)(V), if the court makes a finding:

> that one of the parties has been a perpetrator of spouse abuse, then it shall not be in the best interests of the child to allocate mutual decision-making responsibility over the objection of the other party or the representative of the child, unless the court finds that the parties are able to make shared decisions about their children without physical confrontation and in a place and manner that is not a danger to the abused party or the child.

Here, husband had been charged with child abuse, but pleaded guilty to third degree assault, for striking his eight-year-old son hard in the face. The court initially indicated that this did not qualify as evidence of child abuse under the statute. However, for purposes of resolving this case, the court assumed that this was sufficient evidence of child abuse under the statute. It also found that wife presented credible evidence of spouse abuse by husband. Nonetheless, the court awarded primary parental and sole decision-making responsibility to husband.

Neither party had sought mutual decision-making responsibility, and the court concluded that nothing in § 14–10–124(1.5)(b)(IV)–(V) forbids awarding primary parental responsibility and decision-making responsibility to a party who has committed child and spouse abuse.

The interpretation of a statute is a question of law. *See Ryals v. St. Mary–Corwin Reg'l Med. Ctr.,* 10 P.3d 654, 659 (Colo.2000). In interpreting a statute, our task is to give effect to legislative intent. *Preston v. Dupont,* 35 P.3d 433, 437 (Colo.2001).

In ascertaining legislative intent, we look first to the language employed in the statute. *In re Marriage of Dale,* 87 P.3d 219, 2003 WL 22723020 (Colo.App. No. 02CA1523, Nov. 20, 2003). If the meaning of a statute is clear and unambiguous, we will apply the statute as written, *see Slack v. Farmers Ins. Exch.,* 5 P.3d 280, 284 (Colo.2000), unless to do so would lead to an absurd result. *Showpiece Homes Corp. v. Assurance Co.,* 38 P.3d 47, 51 (Colo.2001).

In § 14–10–124(1.5)(b), C.R.S.2003, the General Assembly authorized allocation of decision-making responsibility "with respect to each issue affecting the child mutually between both parties or individually to one or the other party or any combination thereof." Yet, in § 14–10–124(1.5)(b)(IV)–(V), the General Assembly chose to either prohibit (in the case of child abuse) or presumptively prohibit (in the case of spouse abuse) only "mutual decision-making" responsibility.

This contrast in the General Assembly's language used in the above-mentioned provisions leads us to conclude that, by enacting § 14–10–124(1.5)(b)(IV)–(V), it did not intend to bar or presumptively bar an abusive parent or spouse from exercising individual decision-making responsibility with respect to children. *See Hendricks v. People,* 10 P.3d 1231, 1238 (Colo.2000)("The legislative choice of language may be concluded to be a deliberate one calculated to obtain the result dictated by the plain meaning of the words.") (quoting *City & County of Denver v. Gallegos,* 916 P.2d 509, 512 (Colo.1996)); *see also Joseph v. Wiles,* 223 F.3d 1155, 1161 (10th Cir.2000)(where the legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [it] acts intentionally and purposely in the disparate inclusion or exclusion") (quoting *United States v. Burch,* 202 F.3d 1274, 1277 (10th Cir.2000)).

Wife asserts that the General Assembly could not have intended such an absurd result. For this assertion, she relies on the following comment of a leading proponent of the measures at issue here before a legislative committee: "[I]n terms of harmfulness of parents, if there's abuse in the relationship between the parents, if there is abuse towards the children, then you can take all of the decision-making authority away from the person who is abusive and there are standards for determining that." Hearings on H.B. 1183 before the House Judiciary Committee, 61st General Assembly, Second Session (Jan. 29, 1998)(House Hearings)(remarks of then University of Denver Adjunct Law Professor, now judge of the Eighteenth Judicial District, Angela Arkin).

We are unpersuaded by wife's argument. Responding to objections that the measures did not go far enough in barring abusive parents or spouses from decision-making responsibility, that very same proponent later testified before the Senate Judiciary Committee: "If the parent isn't 100% bad, then they should get some input into decision-making. This bill allows the court that flexibility." Hearings on H.B. 1183 before the Senate Judiciary Committee, 61st General Assembly, Second Session (Apr. 13, 1998)(Senate Hearings)(remarks of Professor Arkin). Further, another proponent related that there was nothing in the bill "which requires the court or prohibits the court from giving sole decision-making on every issue to one party or the other." Senate Hearings (remarks of Michael DiManna, representing the Family Law Section of the Colorado Bar Association).

The General Assembly's failure to amend the bill following this discussion leads us to conclude that, consistent with our plain language analysis, the General Assembly did not mean to preclude as a matter of law abusive parents or spouses from exercising individual, and even sole, decision-making responsibility.

Trial courts traditionally allocate parental responsibilities, including parenting time and decision-making, in accordance with the best interests of the children, giving paramount consideration to the physical, mental, and emotional conditions and needs of the children, after considering numerous statutory factors. *See People in Interest of A.M.K.,* 68 P.3d 563, 565–66 (Colo.App.2003).

Under our construction of the statute, in determining whether to award parenting time or individual decision-making responsibility, the court is to consider whether a parent has been a perpetrator of child or spouse abuse as but two, albeit important, factors in assessing the best interests of the child. *See* § 14–10–124(1.5)(a)(IX)–(X), (b)(IV)-(V); *see also In re Marriage of Martin,* 42 P.3d 75, 78 (Colo.App.2002)(best interests of child standard includes concept of least detrimental alternative).

This construction does not lead to an absurd result. Past abuse severely impedes the parents' ability to work with one another to exercise mutual decision-making responsibility. However, a person's past abuse of a child or spouse does not necessarily and inevitably mean that history is doomed to repeat itself or that the person is incapable of becoming a fit, or even the more fit, parent of a child.

Here, husband had worked on pertinent issues with a parenting coordinator and his own individual therapist. And, the two parenting time evaluators, the guardian ad litem, and the children's therapist all agreed that husband should be the primary residential custodian and that he should have all decision-making authority. Their recommendation was based on husband's greater ability to nurture and meet the children's needs and his ability to foster a relationship between the children and wife.

Thus, we determine that the trial court's decision did not violate the statute or constitute an abuse of discretion.

## II.

■ Wife contends that, because the parties had stipulated that her prescription drug usage was not an issue, the trial court abused its discretion in determining that she "previously had some addiction to painkillers." We disagree.

The parties stipulated that husband would not state on the record or make an issue of wife's current drug usage.

We do not view the trial court's statement that wife "previously had some addiction to painkillers" as indicating that it based its decision in whole or in part on that factor in contravention of the parties' stipulation. Further, the parenting time evaluation shows that wife's treating physician believed that she previously had a physiological dependence on narcotic analgesia, and not a substance abuse problem, which was corrected by gradually weaning her off those drugs. Thus, that physician's opinion was already before the court, and there was no prejudice to wife.

### III.

Although wife's appeal was unsuccessful, we nevertheless deny husband's generic request for an award of attorney fees and costs on appeal. *See In re Marriage of Eisenhuth,* 976 P.2d 896, 902 (Colo.App.1999)(applying C.A.R. 38(d)).

The judgment is affirmed.

Chief Judge DAVIDSON and Judge LOEB concur.