24CA1220 Marriage of Wroten 04-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1220
El Paso County District Court No. 20DR31499
Honorable Monica Jo Gomez, Judge

In re the Marriage of

Matthew Christian Wroten,

Appellee,

and

Cori Elizabeth Slack,

Appellant.

ORDER AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Hawthorne* and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

Matthew Christian Wroten, Pro Se

Cori Elizabeth Slack, Pro Se

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this post-dissolution of marriage case involving Cori Elizabeth Wroten, now known as Cori Elizabeth Slack (mother), and Matthew Christian Wroten (father), mother appeals the district court's order granting father sole parenting time and greater decision-making responsibility.  We affirm.

## I.    Relevant Facts

¶ 2    After sixteen years of marriage and four biological children, father filed a petition to dissolve the marriage in 2020.[1]

¶ 3    In January 2021, the police arrested father on charges of domestic violence and child abuse, and the criminal court entered a mandatory protection order prohibiting him from contacting mother and the children.

¶ 4    A few months later, the parties stipulated that father would follow a phased-in unsupervised parenting-time schedule, with the goal of equal time, while mother would be the primary residential parent.

---

[1] The parties also have a fifth child, who was adopted, but none of the filings or rulings in this case involve that child; they only pertain to the four biological children.  In this opinion, our use of the phrase "the children" refers only to the four biological children.

¶ 5    In October 2021, the district court dissolved the marriage. In the permanent orders, the court accepted the parties' prior parenting time stipulation. The court found that the domestic violence incident was an "isolated event." And because the parties could make decisions cooperatively, the court allocated joint decision-making responsibility.

¶ 6    About a year later, mother filed a motion to modify parenting time and decision-making responsibility for the children. She alleged a series of concerns about the children's well-being while in father's care: (1) the children voiced a reluctance to see father and exhibited signs of both physical and emotional distress upon the children's return to mother; (2) the children were not safe or adequately supervised, listing instances where they were dropped off excessively early at extracurricular activities, leaving them unattended; (3) the children suffered physical harm, with one child treated recently for a severe burn; (4) the children's basic needs were not being met; (5) father taunted and belittled the children, leading to emotional volatility and school absences upon their return to mother; and (6) father told the children to speak negatively about mother. At this time, father was in the third phase

2

of the stipulated parenting plan, having regular overnight parenting time every Wednesday and on alternating weekends.

¶ 7    The district court appointed a Child and Family Investigator (CFI) to investigate, report, and make recommendations regarding mother's modification motion.

¶ 8    In August 2023, the CFI submitted a written report to the district court and both parties. While raising serious issues about mother persistently disparaging father, the CFI also stressed that the parenting-time situation was immediately and detrimentally affecting the children's mental health and well-being. The CFI proposed that mother continue as the primary parent; father comply with a parenting time schedule that begins with three dinner visits per week and progresses toward an equal time arrangement; both parties retain joint decision-making responsibility; and the children participate in individual therapy. To address the children's emotional suffering, caused by the parties' animosity toward each other, the CFI recommended that the parties complete the following educational tasks:

- watch an instructive film to gain perspective on how their behavior was affecting the children;

- enroll in a nurturing parenting course designed to redirect the children's insulting remarks about their father and provide him with skills to manage their acting-out;

- complete an online course on the importance of a father's role in a daughter's life, along with co-parenting;

- attend two co-parenting classes; and

- participate in a co-parenting support group.

¶ 9 In May 2024, after an evidentiary hearing, the district court acknowledged mother's credible domestic violence allegation, stemming from the January 2021 incident. However, the court determined that the incident was "not indicative of ongoing domestic violence." The court stated that there was no evidence showing that father was "continuing to be controlling or threatening." It found that the "parent-child contact problems emanated from the [parties] and not from any domestic violence the [children] may have witnesse[d] in January 2021."

¶ 10 The district court also found that the children were making disparaging remarks about father. Because no evidence showed that mother or her own family members intervened to correct the

children, the court concluded that the children were unable to give their opinion on parenting time.

¶ 11    The court expressed concern about the "emotional chasm" between the parties, which was forcing the children to an "unhealthy level." The court held mother primarily responsible for the "high degree of discord" in the parties' co-parenting efforts. In fact, one of the children was in distress and in need of mental health therapy, which mother resisted. The court reasoned that father's support for the children's consistent school attendance and therapy "cut against any suggestion he's abusive to the children, as both teachers and therapists [were] mandatory reporte[rs]."

¶ 12    The court found that father had finished all the CFI-recommended educational tasks except for those requiring mother's participation. The court also found that father asked mother to cooperate with the CFI recommendations, to which she disagreed.

¶ 13    In the end, the district court ordered that the children reside with father until mother completed the CFI's recommendations, and that in the meantime, she have video contact with the children at least four times a week. The court also granted father sole decision-

making responsibility over the children's medical decisions, including mental health therapy.

¶ 14    On July 9, 2024, mother filed her notice of appeal.

## II.    Mootness

¶ 15    Because it could be dispositive, we first address father's assertion that mother's appeal is moot. He says that, following her notice of appeal, the parties agreed to revise the court-ordered educational requirements, which are now satisfied, resulting in an equal parenting time arrangement since August 30, 2024. In her reply brief, mother does not dispute that statement.

¶ 16    If an event occurs during the pendency of an appeal that makes it "impossible for the court to grant 'any effectual relief' . . . to a prevailing party," the appeal must be dismissed as moot. *DePriest v. People*, 2021 CO 40, ¶ 8 (citation omitted); *see also In re Marriage of Thomas*, 2021 COA 123, ¶ 21 (an issue is moot when the relief requested, if granted, would have no practical effect on an existing controversy); *In re Marriage of Salby*, 126 P.3d 291, 301 (Colo. App. 2005) (original parenting time orders deemed moot when they were superseded by later modifying orders). An appellate court will not render an opinion on an issue's merits when later events

6

have rendered it moot. *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 50.

¶ 17 Mother sought "full parental responsibilities," not the equal parenting time schedule currently in place. Because hypothetically we could reverse the district court's order and the court could, on remand, grant mother's requested relief, an actual controversy exists, and the appeal is not moot. So, we will address the merits.

### III. Modification of Parenting Time

#### A. Children's Safety

¶ 18 Mother contends that the district court erred by granting father sole parenting time. She reasons that the court did not give "paramount consideration to the safety of the children in accordance with the best interests of the child standard," thereby violating section 14-10-124(1.5)(a), C.R.S. 2024, and section 14-10-127.5(1)(b)(I), C.R.S. 2024. We are not persuaded.

¶ 19 A district court has broad discretion when modifying parenting time, and we must exercise every presumption to uphold its decision. *In re Marriage of Dale*, 2025 COA 29, ¶ 7. The court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *Id.*

¶ 20    But we review de novo whether the district court applied the correct legal standard. *Id.* at ¶ 8.

¶ 21    A district court may generally modify an order granting or denying parenting time rights whenever such modification would serve the child's best interests. *See* § 14-10-129(1)(a)(I), C.R.S. 2024. However, the court must not restrict a party's parenting time rights unless it finds that the parenting time would endanger the child's physical health or significantly impair their emotional development. § 14-10-129(1)(b)(I).

¶ 22    In all cases, a court must determine the allocation of parenting time according to the child's best interests, "giving paramount consideration to the child's safety and the physical, mental, and emotional conditions and needs of the child." § 14-10-124(1.5); *see also* § 14-10-123.4(1)(a), C.R.S. 2024 (a child has the right to have parental responsibilities determined based on their best interests). In determining the best interests, the court must consider the factors set forth in section 14-10-124(1.5)(a). *In re Marriage of Finer*, 920 P.2d 325, 327 (Colo. App. 1996).

¶ 23    The court is also required to consider any domestic violence or child abuse allegations. § 14-10-124(1.5)(a), (4)(a). If the court

8

finds that one parent has committed either, it shall consider, as the primary concern, the child's and the abused person's safety and well-being. § 14-10-124(4)(d).

¶ 24    In section 14-10-127.5(1)(b)(I), the general assembly recently declared that the district court's priority, when making decisions regarding parental responsibilities, is the child's safety. And in all cases where the court believes that a party has committed domestic violence or child abuse, the court, as pertinent here, must consider evidence of the accused party's past abuse, including protection orders and arrest records, and coercive control. *See* § 14-10-127.5(3)(a)(II)-(III). The court is prohibited from removing or restricting a child's contact with a protective parent solely to improve the child's relationship with the accused party. § 14-10-127.5(3)(b)(I). If allegations of domestic violence or child abuse have been made, the court must give "strong consideration to a child's stated preference made to the court [or] [CFI], if the stated preference is consistent with the paramount consideration given to the child's safety and the physical, mental, and emotional conditions and needs of the child." § 14-10-127.5(3.5).

¶ 25    Even so, a finding that a parent has committed domestic violence or child abuse does not automatically preclude an award of parenting time. *See In re Marriage of Hatton*, 160 P.3d 326, 333 (Colo. App. 2007) ("[E]ven in those circumstances of serious criminal conduct and domestic abuse, which by their nature would likely establish endangerment and thus be most susceptible of an order denying parenting time rights, the best interests standard applies to the determination of whether parenting time should be permitted."); *see also In re Marriage of Yates*, 148 P.3d 304, 308-09 (Colo. App. 2006) (district court did not abuse its discretion in naming the mother the child's primary parent after she was convicted of misdemeanor child abuse and felony menacing stemming from an incident in which she threatened the father with a knife in the child's presence); *In re Marriage of Bertsch*, 97 P.3d 219, 220-22 (Colo. App. 2004) (district court did not abuse its discretion in granting primary residential parent status to the father who had been abusive to the children in the past but was in therapy and was recommended as their primary parent by evaluators).

¶ 26 While acknowledging mother's credible domestic violence allegation from January 2021, the district court found that the incident did not constitute ongoing domestic violence by father. The court pointed out that he pled guilty, took responsibility for his actions, completed court-ordered classes, and complied with the protection order. It also did not observe any evidence supporting mother's allegations that father was engaging in controlling or threatening behavior. As well, it identified that the parent-child contact problems arose from the parties' conduct, independent of any domestic violence the children may have witnessed in January 2021. A few months after the domestic violence incident, mother consented to modify the criminal protection order and later stipulated to allow father unsupervised parenting time, with the intention of establishing equal parenting time.

¶ 27 The court indicated that the CFI testified about mother coaching the children to dislike father. The court found that the children's disparaging remarks disqualified them from making informed decisions about parenting time.

¶ 28 The district court then focused on the children's emotional well-being, highlighting the "emotional chasm" between the parties

11

and the anguish it caused the children. The court specified that the children were exposed to significant discord in the parties' co-parenting efforts, with mother being the primary source of conflict. One child engaged in self-harm and required mental health therapy, which mother resisted, dismissing father's related concerns. Because therapists and teachers were mandatory reporters, the court found that father's push for the children's therapy and school attendance undermined any suggestion of child abuse.

¶ 29 The court also found that father was trying to improve the co-parenting situation, but mother was not. For example, father had completed all CFI-recommended educational tasks, except those requiring mother's participation, and had asked her to cooperate with the recommendations, but she refused.

¶ 30 Based on these findings, the district court modified the existing parenting time order, granting father sole parenting time until mother completes the CFI-recommended educational tasks.

¶ 31 Contrary to mother's contention, the court complied with the directives of section 14-10-124(1.5)(a) and section 14-10-127.5(1)(b)(I) by thoroughly evaluating the children's safety before granting sole parenting time to father. Given that the court's

findings and ultimate determination are well-supported by the record, we cannot say that the court exceeded its broad discretion. *See Dale*, ¶ 7.

¶ 32    Still, mother insists that other evidence compels a different conclusion.  For example, she cites her testimony at the modification hearing plus certain exhibits purportedly establishing safety concerns about father.  But this argument essentially asks us to reweigh the evidence, which we cannot do.  *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (it is for the district court to determine witness credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom); *see also In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in [district] courts to weigh conflicting evidence."); *In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989) (an appellate court may presume that the district court considered all of the evidence admitted).

¶ 33    In her opening brief, mother also relies on newspaper articles about how courts ignore allegations of abuse in contentious custody cases as well as a November 2023 El Paso Department of Human

Services assessment summary.  But those documents were neither offered nor admitted into evidence at the modification hearing.  So we do not consider the new information.  *See In re Marriage of Drexler*, 2013 COA 43, ¶ 24 (declining to consider exhibit appended to a party's brief that was not part of the certified record); *see also Boulder Plaza Residential, LLC v. Summit Flooring, LLC*, 198 P.3d 1217, 1222 (Colo. App. 2008) (an appellate court will not consider evidence not admitted at the hearing or submitted to the district court before ruling).

### B.    In Camera Interview of the Children

¶ 34    Mother contends that the district court erroneously ignored section 14-10-127.5(3.5) by denying her request for an in-chambers interview of the children.  We will not address the issue because it is undeveloped.  *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (an appellate court may decline to consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12; *see also Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 2017 CO 69, ¶ 40 (an appellate court will "decline to assume the mantle" when parties offer no supporting arguments for their claims); *In re Marriage of Dean*,

2017 COA 51, ¶ 31 (an appellate court will not consider arguments in a reply brief that seek to expand on contentions raised in an opening brief).

### C.    CFI Report

¶ 35    Mother next contends that the district court erred by admitting the CFI report because "it had multiple factual errors and recommendations that rel[ied] on unproven theories, not supported by evidence-based and peer-reviewed research."  But when father moved to admit the report as an exhibit, she did not object.  We therefore will not review this evidentiary objection for the first time on appeal.  *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 600 (Colo. App. 2007) ("If a party makes no contemporaneous objection to the introduction of evidence, we will not review the alleged error on appeal."); *see also In re Marriage of Garrett*, 2018 COA 154, ¶ 35 (issues not raised before the district court will not be addressed for the first time on appeal).

¶ 36    To the extent mother argues that the district court should have deemed the CFI's report and testimony not credible and biased against her, we cannot disturb the court's credibility assessment.  *See Thorburn*, ¶ 49; *see also In re Marriage of Amich*, 192 P.3d 422,

424 (Colo. App. 2007) (the district court can believe all, part, or none of a witness's testimony, even if uncontroverted).

¶ 37    We decline to address mother's "concern about the validity of [the CFI's] expertise" under section 14-10-127(4)(a.5), C.R.S. 2024 because it lacks any meaningful legal analysis. *See Zander*, ¶ 27.

### IV.    Modification of Decision-Making Responsibility

¶ 38    Finally, mother contends that the district court erred by modifying decision-making responsibility. Again she does not demonstrate, with any legal analysis, how the court erred in that regard. So we decline to address the issue. *See Zander*, ¶ 27; *see also Dean*, ¶ 31.

### V.    Appellate Attorney Fees and Costs

¶ 39    Father asks for his appellate attorney fees based on this appeal's frivolity. Although mother has not prevailed, we deny his request. *See In re Estate of Shimizu*, 2016 COA 163, ¶ 34 ("[A]n award of fees on appeal is appropriate only in clear and unequivocal cases where no rational argument is presented . . . .").

¶ 40    However, father is entitled to costs on appeal, *see* C.A.R. 39(a), and may seek those costs in the district court, *see* C.A.R. 39(c).

## VI.  Disposition

¶ 41    The order is affirmed.

Judge HAWTHORNE and Judge BERGER concur.