25CA0232 Marriage of Beers 11-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0232
El Paso County District Court No. 23DR31259
Honorable Jill M. Brady, Judge

---

In re the Marriage of

Jason Douglas Beers,

Appellee and Cross-Appellant,

and

Angela May Beers,

Appellant and Cross-Appellee.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

---

Brown Carrington, PLLC, Dorothy Walsh Ripka, Denver, Colorado, for Appellee and Cross-Appellant

Goldman Law, LLC, Scott D. Goldman, Denver, Colorado, for Appellant and Cross-Appellee

¶ 1    In this dissolution of marriage proceeding, Angela Beers (mother) appeals the portion of the district court's permanent orders allocating decision-making responsibilities between her and Jason Beers (father).  Father also appeals the district court's domestic violence findings.  We affirm.

## I.    Background

¶ 2    The parties married in 2013 and had two children together.  In 2023, after years of marital discord, the parties separated, and father filed a petition for dissolution of marriage.

¶ 3    The court appointed a child and family investigator (CFI) to assess the parties' competing allegations of domestic violence and to make recommendations as to an allocation of parental responsibilities in the best interests of the children.  The CFI reviewed "[e]xtensive evidence" regarding the parties' domestic violence concerns and concluded there was "significant domestic violence, which contraindicate[d] joint decision-making."

¶ 4    After a permanent orders hearing, the district court found, by a preponderance of the evidence, that father had committed domestic violence against mother and that there was no credible evidence that the parties could work together to make decisions for

1

the children. The court then awarded sole educational decision-making responsibility to father and sole medical and religious decision-making responsibility to mother.

## II. Standard of Review

¶ 5        Allocating parental responsibilities is a matter within the sound discretion of the district court. *In re Marriage of McSoud*, 131 P.3d 1208, 1214 (Colo. App. 2006); *In re Marriage of Morgan*, 2018 COA 116M, ¶ 23. We will not disturb the court's allocation absent a showing that the court abused its discretion. *McSoud*, 131 P.3d at 1214. "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law." *In re Marriage of Fabos*, 2022 COA 66, ¶ 16. We review the district court's application of the law de novo. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 55. And we review a district court's factual findings for clear error. *Id.* "A court's finding of fact is clearly erroneous if there is no support for it in the record." *Gagne v. Gagne*, 2019 COA 42, ¶ 17.

## III. Decision-Making Responsibility

¶ 6        Mother contends that the district court erred by allocating sole educational decision-making responsibility to father and sole

medical and religious decision-making responsibility to her — what she deems "split" decision-making responsibility. We disagree.

## A.   Applicable Law

¶ 7   The court may allocate decision-making responsibility with respect to each issue affecting the children (1) mutually between both parties; (2) individually to one party; or (3) any combination thereof. § 14-10-124(1.5)(b), C.R.S. 2025. In so deciding, the court must allocate decision-making responsibility in accordance with the children's best interests. § 14-10-124(1.5). To make this determination, the district court must "consider the nine parenting time factors in section 14-10-124(1.5)(a) and three decision-making factors in paragraph (b) of the same subsection." *Morgan*, ¶ 21.

¶ 8   Additionally, if there is a claim of domestic violence or if the court has reason to believe that a party has committed domestic violence, the court must consider additional factors before allocating parental responsibilities. § 14-10-124(4)(a). As relevant here, if the court finds by a preponderance of the evidence that one of the parties has committed domestic violence, before awarding joint decision-making responsibility the court must first find credible evidence of the parties' ability to make decisions

cooperatively in the children's best interest in a manner that is safe for the abused party and the children. § 14-10-124(4)(a)(II)(A).

## B.    Analysis

¶ 9    In allocating decision-making responsibility, the district court made findings regarding each of the nine parenting time factors in section 14-10-124(1.5)(a) and two of the three decision-making factors in paragraph (b) of the same subsection. Even so, mother asserts that the court's findings were insufficient to support its allocation of decision-making responsibility because the findings focused on parenting time. True, many of the court's findings related more to its allocation of parenting time, but the court is not required to make specific findings on all statutory factors. *See In re Marriage of Rodrick*, 176 P.3d 806, 813 (Colo. App. 2007). Its findings simply must be sufficiently explicit to give the reviewing court a clear understanding of the factual basis for the order. *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9; *In re Marriage of Garst*, 955 P.2d 1056, 1058 (Colo. App. 1998) ("Factual findings are sufficient if they identify the evidence which the fact finder deemed persuasive and determinative of the issues raised.").

¶ 10    Here, the court found that (1) the children were well adjusted to their school which provided stability during a period of transition; (2) mother disagreed with the children remaining in their current school; (3) neither parent had any mental health issues other than father's substance abuse; (4) neither parent demonstrated the ability to encourage the children's relationship with the other parent; (5) mother and father demonstrated a lack of trust and respect for one another; (6) historically the parties worked together, to an extent, to share a system of values, commitment, and mutual support but, more recently, that was "non-existent"; and (7) when the parties were not together or engaged in conflict, they were both able to make good decisions for the children. These findings are supported by the record, undisputed by mother, and provide us with a clear understanding of the district court's basis for its allocation of decision-making responsibility.

¶ 11    Still, mother contends that the district court did not appropriately consider some of her proffered evidence or sufficiently weigh some of the best interest factors. But it is not our role to reweigh the evidence or substitute our judgment for that of the district court. *In re Marriage of Nelson*, 2012 COA 205, ¶ 35 (stating

that, even where "there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court").

¶ 12     We also reject mother's contention that the district court erred by not specifically applying section 14-10-124(4) and acknowledging her objection to joint decision-making responsibility as a victim of domestic violence. At the outset of its order, the court found that there were "allegations of domestic abuse or violence that warrant[ed] the consideration of the factors" in section 14-10-124(4) "before consideration of the standard factors." The court then entered its findings "[i]n contemplation of the domestic violence factors" in section 14-10-124(4). And before allocating sole decision-making responsibility, the court found that joint decision-making responsibility was not in the children's best interests because there was no credible evidence that the parties could work together to make decisions for the children. *See* § 14-10-124(4)(a)(II)(A). Thus, the court properly and thoroughly applied subsection (4) before allocating decision-making responsibility between the parties.

¶ 13      Mother next asserts that the district court's allocation of "split" decision-making responsibility was "antithetical to the intention of" section 14-10-124(4). In support, mother contends that the intention of the statute was to protect victims of domestic violence from being revictimized. Therefore, she posits, the General Assembly could not have intended the court "to allocate even *some* decisions to the primary aggressor" because doing so would allow the perpetrator to continue to exert control over the victim.

¶ 14      Statutory interpretation is an issue of law, which we review de novo. *In re Marriage of Zander*, 2019 COA 149, ¶ 11, *aff'd*, 2021 CO 12. Our primary goal in interpreting a statute is to effectuate the legislature's intent. *Id.* at ¶ 12. In discerning that intent, we look first to the statutory language, giving words and phrases their plain and ordinary meanings. *Id.* If we determine that the language is clear and unambiguous, we must apply the statute as written. *Id.*

¶ 15      Two divisions of this court have interpreted an earlier, yet substantially similar version, of section 14-10-124(4)(a)(II)(A), then numbered section 14-10-124(1.5)(b)(V), C.R.S. 2005. *See In re Marriage of Yates*, 148 P.3d 304, 308 (Colo. App. 2006); *In re*

*Marriage of Bertsch*, 97 P.3d 219, 221 (Colo. App. 2004).[1]  Both

*Yates* and *Bertsch* held that the district court may grant sole

decision-making responsibility to a parent who has committed an

act of domestic violence against the other parent.

¶ 16    In *Bertsch*, a division of this court reviewed the plain language

of the earlier version of the statute and held that the legislature "did

not intend to bar or presumptively bar an abusive parent or spouse

from exercising [sole] decision-making responsibility."  97 P.3d at

221.  The division recognized that, although child or spousal abuse

is an important factor, it is not the only one to be considered when

allocating decision-making responsibility.  *Id.* at 222.  And it was

not persuaded by the assertion that its interpretation of the statute

would lead to an absurd result.  *Id.*  It reasoned that, while past

abuse would severely impede the parents' ability to work together,

---

[1] Mother argues that the statute applied in *In re Marriage of Yates*, 148 P.3d 304 (Colo. App. 2006), and *In re Marriage of Bertsch*, 97 P.3d 219 (Colo. App. 2004), is distinguishable from the current statute because it does not contain any reference to "a claim of domestic violence."  However, the prior statutory language still required the court, when allocating decision-making responsibility, to consider "[w]hether one of the parties ha[d] been a perpetrator of spouse abuse."  § 14-10-124(1.5)(b)(V), C.R.S. 2005.  Thus, we see no practicable difference between the prior and current versions of the statute in this regard.

8

"a person's past abuse of a child or spouse does not necessarily and inevitably mean that history is doomed to repeat itself or that the person is incapable of becoming a fit, or even the more fit, parent of a child." *Id.*

¶ 17    Similarly, in *Yates* a division of this court upheld an allocation of sole extracurricular decision-making responsibility to the husband and sole decision-making responsibility over all other issues to the wife, despite the wife's prior convictions for domestic violence and child abuse.  148 P.3d at 308-09.  Like in *Bertsch*, the division in *Yates* relied on the plain language of the statute and held that a finding of child or spousal abuse was not dispositive as to whether a parent may be granted decision-making responsibilities.  *Id.* at 309.

¶ 18    Section 14-10-124 has been revised several times in the years following *Bertsch* and *Yates*.  *See, e.g.*, Ch. 292, sec. 5, § 14-10-124, 2021 Colo. Sess. Laws 1731-32; Ch. 136, sec. 19, § 14-10-124(1.3), 2021 Colo. Sess. Laws 712; Ch. 344, sec. 3, § 14-10-124, 2024 Colo. Sess. Laws 2336-38.  And we may presume that the legislature knew of those cases when revising the statute.  *See Zander*, ¶ 26; *Przekurat v. Torres*, 2016 COA 177, ¶ 23 (reviewing

court presumes the legislature is aware of published judicial precedents construing prior versions of a statute), *aff'd*, 2018 CO 69. One such revision stemmed from H.B. 21-1228 — cited by mother — detailing a variety of domestic violence statistics and stressing the need for courts to consider domestic violence as a factor when allocating parental responsibilities. 2021 Colo. Sess. Laws at 1731-32. And yet, nothing in section 14-10-124(4)(a)(II)(A) indicates a legislative intent to (1) overrule the holdings and reasoning in *Bertsch* or *Yates*; (2) bar a parent found to have perpetrated domestic violence from being allocated sole decision-making responsibility; or (3) add further limitations on the court's authority to allocate decision-making responsibility mutually between both parties, individually to one party, or any combination thereof. Therefore, we see no reason to depart from those cases holding that the plain language of the statute allows a district court to grant sole decision-making responsibility to a parent who has committed an act of domestic violence.

¶ 19    We are similarly unpersuaded by mother's attempt to distinguish this case from *Bertsch* and *Yates*. Mother argues that because father made no attempt to correct his abusive behavior,

unlike the perpetrating parties in *Bertsch* and *Yates*, the court's allocation of sole educational decision-making responsibility to father was contrary to the children's best interests. But mother's argument effectively asks us to read an additional factor into the required analysis under section 14-10-124(4) — that, for a district court to award sole decision-making responsibility to a parent found to have committed acts of domestic violence, the court must first find that parent has engaged in corrective measures. As discussed above, if the General Assembly intended to impose additional measures or restrictions on the court's ability to award decision making responsibility to a perpetrating parent, it could have. But it did not, and we will not read additional requirements into the plain language of the statute. *See Springer v. City & County of Denver*, 13 P.3d 794, 804 (Colo. 2000) ("Where the legislature could have chosen to restrict the application of a statute, but chose not to, we do not read additional restrictions into the statute.").

¶ 20    Finally, mother contends that the court's allocation of educational decision-making responsibility to father erroneously curtailed her religious decision-making responsibility. In support mother argues that she objected to the children's continued

11

enrollment at their current school due to its "religious teachings."
True, mother testified about her concerns with the curriculum. But
the CFI testified that the curriculum appeared to be standard and,
based on her investigation, that father seemed poised to make
better educational decisions for the children. And it is not our role
to reweigh the evidence or substitute our judgment for that of the
district court. *Nelson*, ¶ 35

¶ 21 Because the district court's findings have clear record support,
and the court considered the statutory factors of section 14-10-124,
including those in subsection (4), we conclude that the court's
allocation of decision-making responsibility was not an abuse of
discretion.

## IV. Domestic Violence Findings

¶ 22 Father's sole contention on appeal is that the district court
erred by finding that he was the "primary aggressor" of domestic
violence. We discern no error.

### A. Preservation

¶ 23 As a preliminary matter, we disagree with mother's contention
that father failed to preserve this issue. Father's contention is
directed at the district court's finding, and he could not have raised

it until after the court ruled. A party need not object to a court's findings to preserve a challenge to those findings. *In re Marriage of Crouch*, 2021 COA 3, ¶ 17; *see* C.R.C.P. 52. Accordingly, we consider, and reject, father's assertion of error.

## B. Analysis

¶ 24 In considering whether one of the parties committed an act of domestic violence, engaged in a pattern of domestic violence, or had a history of domestic violence, as directed by section 14-10-124(4)(a)(II), the district court found that the parties had a "complicated dynamic," had both demonstrated domestic violence "characteristics," but that father was the "primary aggressor." Father contends that making a finding regarding the parties' "comparative levels of perpetration of domestic violence," in the absence of a statutory mandate to make such a finding, was an abuse of the district court's discretion. Effectively father argues that a fact finder's authority must be limited to making only findings which are specifically prescribed by statute. But father cites no authority supporting this assertion and we are aware of none.

¶ 25    Father also asserts that the court's finding was clearly erroneous because it was based upon speculative evidence insufficient to meet the required burden of proof. True, the court had a "question mark" regarding how much of mother's "abusive behavior" was reactive to abuse perpetrated by father as opposed to independently instigated by mother. But the court was clear that it had no question that father had perpetrated domestic violence and made such a finding by "more than" a preponderance of the evidence. In reaching this finding the court considered (1) mother's testimony about physical, emotional, verbal, and financial abuse perpetrated by father during the marriage, which the court found to be credible; (2) father's admissions to the CFI; (3) father's explanation for one alleged instance of abuse, which the court found to be incredible; and (4) the CFI's report, which concluded father was often the predominant aggressor. *See In re Marriage of McNamara*, 962 P.2d 330, 333 (Colo. App. 1998) ("[I]t is the responsibility of the trial court as the trier of fact to determine the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence.").

14

¶ 26   Because the district court's findings are supported by the record, we decline to disturb them.

## V.   Attorney's Fees

¶ 27   Mother and father request attorney fees under C.A.R. 38(b), C.A.R. 39.1, and section 13-17-102, C.R.S. 2025, asserting that the other party's appeal is substantially frivolous.  We deny these requests.  Although unsuccessful, neither party's contentions were so lacking in merit as to constitute frivolity or bad faith.  *See Mission Denv. Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984) ("Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights."); *see also In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases . . . ."), *aff'd*, 2019 CO 81.

## VI.   Disposition

¶ 28   The judgment is affirmed.

JUDGE BROWN and JUDGE MEIRINK concur.